STATE *EX REL.* SEALE v. DURANT.

MANDAMUS.—The act of 23 Stat., 1194, requires the governor to ap-
point a commission, whose duty it is to divide and apportion the
lawful and *bona fide* indebtedness of the old counties of Sumter,
Kershaw and Darlington with the new county of Lee; such com-
mission met and apportioned, or provided for the apportionment, of
the debts of the counties of Sumter and Darlington, but no appor-
tionment has been made of the indebtedness of the county of Ker-
shaw, and until such apportionment of the Kershaw debt is made,
it is not the plain, ministerial duty of the county board of com-
missioners of Lee County to pay the amount found by the commis-
sion to be due Sumter County by Lee out of a fund raised by sale
of bonds to pay the apportioned debt due by Lee County to the
three old counties, where it appears that the fund in hand is not
sufficient to pay the apportioned debt of all the three old counties.
*McLaughlin* v. *County Commissioners,* 7 S. C., 375, *distinguished from
this case.*

Before PURDY, J., Lee, September, 1904.    Reversed.

Petition for mandamus by Wm. H. Seale, James T. McNeill and Frank E. Thomas, as County Board of Commissioners for Sumter County, against J. Oliver Durant, Luther A. Moore and Wm. A. Gardner, as County Board of Commissioners for Lee County, and John M. Smith, clerk. From order of Circuit Court requiring issuance of writ, respondents appeal.

*Messrs. J. T. Hay* and *B. F. Kelley,* for appellants, cite: *Mandamus cannot issue to control judgment or discretion of public officer:* 13 S. C., 266. *Management of county funds is not subject to control of courts:* 7 S. C., 86; 14 S. C., 408; 24 S. C., 546. *Officer must have ability to comply and it must be his clear duty:* 1 S. C., 23. *Preamble is no part of the act:* 23 Ency., 1 ed., 329; 2 Bail., 430. *Claim must first be presented to commissioners of Lee Co.:* 24 S. C., 549.

*Mr. L. D. Jennings,* contra, cites : *That there is not money enough to pay claims of all old counties, will not avail appellants:* 26 S. C., 192; 13 S. C., 262; 7 S. C., 375. *Principles governing in mandamus:* 30 S. C., 581; High, sec. 10. *This claim need not be presented to the commissioners of Lee:* 24 S. C., 543; 13 S. C., 264; 19 Ency., 782. *As to ministerial duty:* 19 Ency., 2 ed., 740; 15 S. C., 322; 34 S. C., 194.

April 5, 1905. The opinion of the Court was delivered by

MR. JUSTICE JONES. The board of county commissioners of Sumter County made application in the Circuit Court for a writ of mandamus to compel the board of county commissioners of Lee County to pay over to relators the amount alleged to be due Sumter County from Lee County as apportioned indebtedness growing out of its formation from parts of Sumter, Darlington and Kershaw Counties. Judge Purdy granted the writ requiring that respondents draw their warrant against the fund provided for that purpose, for $5,247.17, with interest from February 25th, 1902, at six

per cent., as proportionate part of bonded and note indebtedness, and for $2,206.90, with interest from December 10th, 1902, at seven per cent. per annum, as proportionate part of expenditures, making a total of $7,454.07, exclusive of interest. From this judgment, respondents have appealed on a number of exceptions which practically raise the question whether the Circuit Court committed error in issuing the writ in view of the facts in the case and the law governing mandamus.

In the case of *State* v. *Whitesides,* 30 S. C., 579, 581, 9 S. E., 661, the rule governing mandamus cases is thus stated: "Where a party has a legal right, to the enjoyment of which the discharge of a ministerial duty on the part of a public officer is necessary, and he has no other adequate remedy, in case the officer refuses to discharge this duty, *mandamus* is the proper proceeding. * * * Upon application for this writ against a public officer, the questions to be considered are: 1st. Is the duty claimed a ministerial duty? 2d. Has the petitioner a legal right, for the enjoyment, protection or redress of which the discharge of said duty is necessary? 3d. Has he no other adequate and sufficient remedy?" This same case defines a ministerial duty as one "Expressly imposed by law or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative."

It becomes necessary, then, to inquire, first, if such plain, ministerial duty imposed by law exists in this case. The county of Lee was established by act of 1902, 23 Stat., 1194. Section 12 of this act is as follows: "Section 12. The governor is hereby authorized and empowered to appoint a commission of nine persons, two of whom shall be residents of each of the counties of Kershaw, Darlington and Sumter, two of the county of Lee, and one a resident of some other county, which said commission shall divide and apportion between said four counties the present lawful and *bona fide* indebtedness of the old counties of Kershaw, Darlington and Sumter, so that the county of Lee shall bear its just appor-

tionment of the whole indebtedness of the old counties from
which it has been formed, and also any charges or claims
which said counties may have against the county of Lee for
such transaction as may occur from the date of the passage
of this bill to the next general election, having regard to the
amount of unpaid taxes due to the said counties of Kershaw,
Darlington and Sumter." In pursuance of this section, the
governor appointed as commissioner, T. H. Gibbes, of Rich-
land County, chairman; H. G. Garrison and N. A. Bethune,
commissioners for Kershaw County; Robert McFarlane and
C. W. Welling, commissioners for Darlington County; Neill
O'Donald and C. G. Rowland, commissioners for Sumter
County; and G. F. Parrott and C. T. Perine, commissioners
for Lee County. These commissioners met in the city of
Columbia, S. C., on July 14th, 1903, and at this meeting
a settlement sheet between Sumter and Lee Counties, con-
sisting of thirty-six pages, was submitted and was adopted
by the commission, "Subject to be credited for any errors and
subject to a settlement of school funds, leaving settlement of
school funds open for settlement between the counties, Lee
County to have thirty days from date to report any claims
as to errors in the settlement sheet, and any such report to
be made to the chairman of the commission." The propor-
tion for division as between Sumter and Lee Counties was
.7463 per cent. for the former and .2537 per cent. for the
latter. A resolution was adopted striking out a credit
allowed Lee County for $125 for dispensary insurance, and
allowing Lee County credit for a proportion of that amount
in the same ratio that the indebtedness is apportioned. A
further resolution was adopted by the commission, allowing
Lee County credit for her proportion of the value of the
chain-gang equipment, as of date December 10th, 1902, in
the same proportion that the indebtedness was apportioned,
the settlement of this item to be made by the supervisors of
both counties. It appears that on December 5th, 1903, the
said supervisors agreed upon $1,650 as the value of the chain-
gang equipment, of which Lee County's proportion would

be $416.06; it also appears that the school fund matter has been adjusted between Sumter and Lee Counties and that no application has been made for other correction of said settlement sheet.

Notwithstanding the irregularity of not reporting to the commission the settlement of these matters left open by the commission and formal action thereon by the commission, since these matters have been made certain and the correctness of the apportionment as between Sumter and Lee Counties is not now disputed, we would not disturb the judgment of the Circuit Court if there were no other interests involved save those of Sumter and Lee Counties. With reference to the interest of Darlington County, it appears from the minutes of the commission that Mr. McFarlane presented the claim of Darlington County and stated that Darlington and Lee Counties had practically agreed and that Darlington County owes Lee County $662.23. This statement and settlement was confirmed by the commission, "subject to correction of errors." As no error has been suggested and it appears that Lee County is not indebted to Darlington County, there would be nothing to prevent the affirmance of the judgment of the Circuit Court if only the interests of Darlington, Sumter and Lee Counties were concerned.

But the serious difficulty which exists is with reference to the status and interest of Kershaw County. The minutes of the commission show on this subject as follows: "Mr. Garrison stated on behalf of Kershaw County, that no statement had as yet been submitted, but that the Kershaw County commissioners would submit their account to the Lee County commissioners, and if they could not agree on the settlement, then they would submit the statement to the commission." That statement has not been presented to the commission, nor has the commission taken any action whatever with reference to apportioning the indebtedness between Kershaw and Lee Counties. The untraversed return of respondents to the rule to show cause herein states: "That the respondents have used all effort in their power to secure the apportion-

ment of the debt between Kershaw and Lee Counties, but so far have not been able to have the same adjusted. That so far as respondents are informed and can discover upon the adjustment of indebtedness, the county of Lee will be indebted to the county of Kershaw in the sum of not less than $4,000, and such indebtedness may reach $5,000. That the respondents cannot be required to pay the demand of the county of Sumter, which will about take the whole amount derived from the sale of the bonds aforesaid and leave all indebtedness of the county of Lee to Kershaw County entirely unprovided for."

For the purpose of raising funds to pay the apportioned indebtedness of Lee County to the counties of which it was formed, an act of the legislature was adopted February 19th, 1904 (acts 1904, page 590), authorizing the sale of $10,000 of coupon bonds, to be known as apportioned bonds. These bonds were issued and sold and the proceeds, $10,000, are now in the hands of the board of county commissioners of Lee County, for application according to the purposes of the act. Since the claims of Sumter County aggregate $7,454.07, with interest, and the probable claims of Kershaw County will not be less than $4,000, and may reach a greater sum, it is manifest that the fund is not sufficient to pay the claims of Sumter and Kershaw Counties in full. To now pay Sumter County in full and leave Kershaw County's claim unprovided for, would be so clearly unjust that a court of justice should not sanction payment in full to Sumter County, under the circumstances, unless some imperative rule of law compels. We know of no such rule. The statute appropriates a fund to the claims of Kershaw County as well as Sumter County, and before any duty arises to pay, the commission charged with the apportionment of the indebtedness must act in the premises. So far, the action of the commission is incomplete and the conditions do not exist which would make it the plain ministerial duty of those in charge of the fund to pay it out. When the proportionate indebtedness of Lee County to Kershaw County is ascer-

tained in the manner provided by law, then the duty would arise to pay the claims out of the fund in question in full, if the funds be sufficient, *pro rata,* if not sufficient.

The case of *McLaughlin* v. *County Commissioners,* 7 S. C., 375, relied on by the Circuit Court and by counsel for Sumter County, does not seem to be in point, for in that case the claims of Mrs. McLaughlin had been duly audited for an amount not exceeding the fund for payment which had been specifically collected for such claims. Here all conditions precedent to payment have not been complied with as in that case, because the commission to adjust the indebtedness has not finished its work and the fund appears to be insufficient to pay in full all claimants having rights with respect thereto. This is not the case of a creditor whose diligence should give him priority or preference, but a case where a fund is for distribution according to law among several parties having equal rights with respect thereto. Wherever lies the fault of the non-action of the commission with respect to the claims of Kershaw County, the commission must act as required by the statute before a ministerial duty to distribute the fund can arise.

The judgment of the Circuit Court is reversed and the petition for mandamus is dismissed.

MR. JUSTICE GARY *did not sit in this case because of illness.*