## BASCOM v. OCONEE COUNTY.

CONTRACT—COUNTY COMMISSIONERS—OCONEE COUNTY—HIGHWAY—BRIDGES—ULTRA VIRES.—A contract entered into by the county commissioners of Oconee County and the ordinary of Raburn County, Ga., to purchase a bridge, already built across a river dividing the two States, each County to pay for one-half, to be paid for when the road in Oconee County leading to the bridge should be made a public highway, is not *ultra vires*, and is binding on Oconee County after the legislature has authorized the board of county commissioners of Oconee County to open the road as a public highway.

Before BENET, J., Walhalla, October, 1895. Affirmed.

This action arises upon a claim presented by H. M. Bascom, J. J. Smith, A. Whitmire, and W..G. Russell, for themselves and others, to the Board of County Commissioners of Oconee County, against the same, for $400, for one-half interest in "New Bridge, near W. G. Russell's." The board refused to audit the claim. The claimants appealed to the Circuit Court, which ordered the board to audit and pay it. The county appeals.

*Mr. J. R. Earle*, for appellant, cites: Dillon, p. 519; 21 S. C., 416; 24 S. C., 547, 549; 1 Rich., 346.

*Messrs. Jaynes & Shelor*, contra, cite: 41 S. C., 360; Rev. Stat., 645.

Nov. 25, 1896. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an action commenced before the county board of commissioners for Oconee County on a claim for $400, for one-half interest in a bridge called "New Bridge, near W. G. Russell's," over Chattooga River,

the boundary between Oconee County, South Carolina, and Raburn County, Georgia. The claim was filed with the board for audit, April 1st, 1895, and the matter came up for hearing before the board, July 22d, 1895. The claim is based upon an alleged contract, made April 12th, 1894, between the plaintiffs, the owners of the bridge on the one part, and the then county commissioners of Oconee County, and the ordinary of Raburn County, Georgia, on the other part. After hearing evidence on both sides, the county board refused to audit the claim. The claimants appealed to the Circuit Court, and his Honor, Judge Benet, reversed the judgment of the county board, and ordered the board to audit said account and to pay the same out of proper funds for fiscal year 1894–5. His Honor found, as matter of fact: "That on the 12th day of April, 1894, there was a meeting at the bridge by and between the plaintiffs, representing themselves and other owners and stockholders of said bridge, and J. M. Hunnicut, J. L. Reeder, and Nathaniel Phillips, the then county commissioners of Oconee County, South Carolina, and F. A. Bleckley, ordinary of Raburn County, in the State of Georgia. The purpose of the meeting was to treat with each other concerning the purchase from plaintiffs of said bridge by the counties of Raburn, Georgia, and Oconee, South Carolina. The bridge had been built by plaintiffs as a private enterprise, and was just nearing completion at that time. But it had been suggested to plaintiffs that the public ought to have the use of the bridge, and it was proposed that the counties of Raburn and Oconee buy it from the owners and open the bridge to the public travel. It appears that the parties came to an agreement for the sale by plaintiffs to the said counties jointly, for the sum of $800, each county to pay $400 for a half interest therein, provided the road leading from the public highway at Mill Creek to the New Bridge could be established as a public highway."

It seems that, after the alleged contract of April 12, 1894, some steps were taken to establish the said road as a public

road, but it does not appear in the record whether compliance was made with the statute regulating the opening of new roads. At any rate, it seems that at a meeting of the board in August, 1894, the time fixed for the hearing and consideration of the matter of establishing said road as a public road, there was opposition to the establishment of the road, and the board refused to make the road a public road. At this meeting, Mr. Hunnicut, a member of the board, in the presence of Mr. W. G. Russell, one of the representatives of the bridge owners, said to the board, "That ends it, as it is out of our jurisdiction to go any further under the law." So far as the record shows, no appeal was taken from this action of the board. On the 4th December, 1894, the board of county commissioners joined with other citizens in a petition to the legislature, then in session, to empower the county commissioners to open and make public said road, and on the 24th December, 1894, an act was approved, authorizing and requiring "the county board of commissioners to open and establish as a public highway the road leading from the public highway at Mill Creek to the Chattooga River at New Bridge, near W. G. Russell's, in said county" (Oconee). It does not appear that any action has been taken under this act by the county board of commissioners.

The Circuit Court held "that the testimony, both on the part of the plaintiffs and defendant, establishes an executory contract with a condition precedent, the condition being the opening and establishing of a road from Mill Creek to the New Bridge as a public highway. It is claimed on the part of the defendant that this condition failed, because the said road was not established as a highway by the former board of county commissioners, but that it was made a public road by the legislature by act approved December 24th, 1894, and the latter was not a compliance with the condition contained in said executory contract. I do not think this position is tenable, for the reason that the establishment of said road as a public highway by the legislature,

on petition of the former board of county commissioners, is a substantial compliance with the condition contained in said contract of purchase."

The defendant appeals, alleging six grounds of error; but we will not consider the 1st, 2d, 3d, 4th, and 5th exceptions, as they relate, either in whole or in part, to alleged errors in findings of fact, but we will proceed to consider at once the real and serious ground of appeal.

The sixth exception alleges error in the Circuit Court decree on the ground "that the subject matter of the agreement was not within the jurisdiction of the county commissioners, not being on a public highway." This is substantially, as we understand it, the ground upon which the county board refused to audit the claim. In the report of the case to the Circuit Court, the board said: "That the plaintiffs had failed to establish any contract on the part of Oconee County, or the proper authorities of same, to bind this board to audit the claim." In other words, the question is raised as to whether the old board of county commissioners had power to make the contract relied on by the plaintiffs. It is well settled, that whoever deals with the agents of a municipal corporation must, at his own peril, take notice of the limits of the powers of the corporation and its agents. Mr. Dillon, in his work on Municipal Corporations, 3d ed., § 457, says: "The general principle of law is settled beyond controversy, that the agents, officers, or even city council of a municipal corporation, cannot bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which, not being in terms authorized, is against public policy. This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are the corporators, the officers are but the public agents of the corporation. The duties and powers of the officers or public agents of the corporation are prescribed by statutes or charter, which all persons not only may know, but are bound to know. * * * It re-

sults from this doctrine that unauthorized contracts are void, and in actions thereon, the corporation may successfully interpose the plea of *ultra vires*, setting up as its defense its own want of power under its charter, or constituant statutes to enter into the contract." This is a sound defense, even against municipal bonds in the hands of innocent parties, and no acts of the agents of the corporation will estop the corporation from disputing their validity. *Feldman & Co.* v. *City Council*, 23 S. C., 69. This principle was applied in the case of *Hill* v. *Laurens County*, 34 S. C., 144, where, in a suit against the county for damages for injury, sustained while traveling along an alleged highway, it appeared that the alleged highway where the injury occurred was a bend or departure from the regular highway, cut out by the overseer, at the instance of neighbors, to avoid a rough place. It was held that the injury did not occur on a public highway, that the overseer made the change in the road without authority, the act regulating the laying out of roads or changing an old road not having been complied with, and that the county of Laurens was not bound by the unauthorized action of the overseer, even though the county commissioners approved the change in the road.

Now, what was the power of the county commissioners of Oconee County, April 12th, 1894, as to the purchase of a new bridge over Chattooga River, which is one of the boundaries between this State and Georgia, the bridge not being on any public highway within Oconee County? Revised Stat. 1893, sec. 645, gives the county supervisors general jurisdiction over all public highways, roads, bridges and ferries, &c., in their respective counties. This is substantially the provision as to county commissioners in sec. 602, Gen. Stat. 1882, in force April 12, 1894, since the new county government act took effect January 1, 1895. They were required to take charge of and repair the highways in the county. Sec. 618, Gen. Stat. 1882. They were authorized and empowered to have special supervision of the

building of new bridges over the rivers and creeks of this State. Gen. Stat. 1882, sec. 1094. If any bridge over waters of this State which constitute a boundary line between counties in this State is necessary, provision is expressly made how it is to be done, how the expense is to be paid, and how the bridge is to be thereafter maintained. Sec. 1094. We find nothing in the statutes giving county commissioners power to buy or build bridges over rivers separating this State from another State, and it is impossible to suppose that the legislature meant to confer such power without some express provisions to that effect, when it is as explicit as to building bridges over streams separating counties in this State. Nor can such power be inferred from a grant of general jurisdiction over highways and bridges *within* their respective counties; but, besides this, the bridge sought to be purchased was not on any public highway at the time of the contract set up in this case, and, for all that appears, is not on any highway now, since it does not appear that action making this road a public road has been taken by the county authorities of Oconee under the act of December 24, 1894, above referred to. It seems too clear for argument that county commissioners had, and have, no power to buy a private bridge on a private road. This road had been discontinued as a public road, pursuant to an act of the legislature, approved December 4, 1888. We cannot assent to the proposition that the county commissioners, on April 12th, 1894, had power to make an executory contract as to the purchase of a bridge not part of a highway or public road within Oconee County, conditioned on their establishing a public road to the bridge, for two sufficient reasons: first, for want of statutory authority to buy or build a bridge not a part of a highway within their county, or not a part of a highway leading from their county to another in this State; and, second, because it would be contrary to public policy to sustain such a contract. The duty of county commissioners to hear and determine petitions for the opening of a

public road, upon evidence submitted for and against the application, pursuant to the statute (sec. 1172, Rev. Stat. 1893), is of a judicial nature. The impartiality and freedom from bias or prejudice which should characterize tribunals established to hear and determine issues would be destroyed or endangered, if the board or court charged with this duty were permitted to make contracts conditioned upon their own judicial acts. The alleged contract was *ultra vires*, and Oconee County is not bound thereby. While thus vindicating a sound and salutary principle of law, we are gratified that no harm is done to the plaintiffs. They still own their bridge, which they built as a private enterprise, and such use as the public has made of the bridge since the time of the alleged contract was with their full consent, which, as owners, they had a perfect right to give or withhold as they saw fit.

For these reasons, I think that the judgment of the Circuit Court should be reversed, and that the judgment of the county board of commissioners for Oconee County should be affirmed.

MR. CHIEF JUSTICE McIVER *concurs* with Justice Jones.

MR. JUSTICE POPE. The separate opinion of Mr. Justice Jones has so fully stated the history of the facts underlying the contention here involved, that I deem it unnecessary to restate them.

I have been unable to agree that the principles of law laid down in the separate opinion are applicable and controlling in this contention, though I am free to confess that they are not only sound in themselves but strongly stated. My difficulty lies in the fact that no such questions were argued before Judge Benet, who heard the case on the circuit, nor have such views been presented to this Court. While I recognize the power in this Court to suggest questions of jurisdiction of our own motion, I do not regard the case at bar as calling upon us to exercise such power. The contention as made has largely consisted in the question of

law and fact growing out of an allegation by one party, that the board of county commissioners of Oconee County had made their contract for the purchase of the bridge from the plaintiffs to depend upon their ability, under the law, to open, as a public road, the road to this bridge, and that when opposition was offered thereto by some of the citizens of Oconee County, their contract to purchase the bridge was declared by them rescinded. On the other hand, it was alleged by the plaintiffs that the said board of county commissioners prevailed upon them to open the bridge to the free use by the public, which has never been changed, and also that the said board applied to the legislature to grant them power to open, as a *public road*, a road that already existed, and that this power was granted by the General Assembly. About this phase of the contention testimony was offered by both sides to the controversy and argument had, and that this issue was decided by the Circuit Judge in favor of the plaintiffs. This is now a public road and public bridge, and used as such by the citizens of this State and the State of Georgia. It is no longer a question of power to open a road or build a bridge, for the road is open and the bridge is built. The serious question is, who shall pay for this public benefit? Shall the plaintiff be made to do so, or shall the people of Oconee County do so? The very act of the General Assembly not only authorizes but directs the county commissioners of Oconee to open up the road to the New Bridge as a public road. It seems to me that the county of Oconee is now estopped to deny this contract. But I hold that the questions of law discussed in the separate opinion of Mr. Justice Jones are not involved here. In these views Mr. Justice Gary concurs, while Mr. Chief Justice McIver and Mr. Justice Jones do not concur. And as it is provided in the present Constitution of this State that when there is an equal division of the members of the Court, the Circuit Court judgment is affirmed. Therefore, it is the judgment of this Court,

that the judgment of the Circuit Court stand affirmed, under the Constitution of this State.

MR. JUSTICE GARY. The question of jurisdiction in this case is based on the ground that the action of the board of county commissioners of Oconee County, in entering into the agreement with the plaintiffs relative to the bridge, was *ultra vires*, and not a lack of jurisdiction on the part of the authorities of Oconee County to adjudicate plaintiff's claim; therefore, there is doubt whether the question of jurisdiction is properly before this Court for consideration. But, waiving such objection, we will proceed to show briefly why, in our opinion, said action of the board of county commissioners was not *ultra vires*. A familiar maxim of law is "*omnia presumuntur rite esse acta*," and the presumption is that the action of the board in entering into said agreement was proper and right. It is also to be presumed, until the contrary is made to appear, that officers in acting officially had before them such facts as justify their action; there was no testimony offered for the purpose of showing that Chattooga River was not a navigable stream, and if it is necessary to presume that it was navigable so as to show that the action of the board was valid and legal, it certainly is in the interest of the orderly administration of justice to make such presumption, and it will be made. It is also but a matter of justice to the board, to presume that it intended to purchase that half of the bridge lying within the territorial limits of Oconee County, if it can be shown that one-half of said bridge lies within such territorial limits *and is over a highway.*

We will now attempt to show, in view of these presumptions; 1st. That by reason of the fact that the bridge was built over the Chattooga River, in Oconee County, where the river is the dividing line between this State and Georgia, one-half of said river was within the territorial limits of Oconee County; and 2d. That so much of said bridge as covered that part of the river within the territorial limits

of Oconee County, was the subject of agreement within the powers and jurisdiction of said board. At the time when said agreement was made, the following statutory provisions were in force: Sec. 1 Rev. Stat. (1882). "From the State of Georgia, South Carolina is divided * * * by the Chattooga River to the North Carolina line * * * The line being low water mark at the southern shore of the most northern stream of said rivers, where the middle of the river is broken by islands; and middlethread of the stream where the rivers flow in one stream or volume." Section 602, Rev. Stat. (1882). "County commissioners, elected in pursuance of section 19 of article IV. of the Constitution, shall have jurisdiction over roads, highways, ferries, and bridges, and all matters relating to taxes and disbursements of money for county purposes, in accordance with the provisions of law, and in every other case that may be necessary to the internal improvement and local concerns in their respective counties." In construing section 19, art. IV., of the Constitution, in connection with section 1062 of the Rev. Stat. (1882), hereinafter mentioned, the Court in *Walpole* v. *City Council*, 32 S. C., 554, said: "Under these provisions, we cannot doubt that the county commissioners of Charleston County have exclusive jurisdiction over all the highways, ferries, bridges, and cuts, which are within the territorial limits of the county; and that the joint resolution of 1885, appointing the plaintiffs commissioners of Newtown Cut, was inconsistent with that jurisdiction, so far as it affected Charleston County, and was, therefore, unconstitutional and void." Section 1096, Rev. Stat. (1882). "The county commissionors of the several counties of this State shall have and exercise the same powers over the navigable streams, water-courses, and cuts, within the limits of their respective counties, as they have over the highways and bridges therein, &c." Section 1097, Rev. Stat. (1882). "The said navigable streams, water-courses, and cuts, shall be taken and deemed as highways, and the superintendent of highways, appointed for the several highway districts,

shall take charge of and keep the same in repair at all times." Section 1062, Rev. Stat. (1882). "All streams which have been rendered, or can hereafter be rendered, capable of being navigated by rafts of lumber or timber by the removal therefrom of accidental obstructions, and all navigable water-courses and cuts, are hereby declared navigable streams, and such streams shall be common highways, and forever free, as well to the inhabitants of this State as to the citizens of the United States." The foregoing authorities satisfy us that the river, where the bridge was built, was a *highway;* that the bridge was built where the river was partly *within the territorial limits of Oconee County;* that so much of the bridge, to wit: one-half, was within the *exclusive* jurisdiction of the county commissioners of Oconee, and that the agreement touching the purchase thereof was not *ultra vires.*

I, therefore, concur in the opinion of Mr. Justice Pope, that the judgment of the Circuit Court should be affirmed.