## 9479

### PARIS MOUNTAIN WATER CO. *v.* CITY OF GREENVILLE.

(89 S. E. 225, 669.)

1. STATUTES—CLASS LEGISLATION—CITIES.—Civ. Code 1912, secs. 3027-3031, authorizing three cities to acquire waterworks systems by condemnation, violate Const., art VIII, sec. 1, providing that no municipal corporation shall have any powers not possessed by other municipalities of the same class, where there is a fourth city in the same class.

2. EMINENT DOMAIN — PROCEEDINGS TO TAKE PROPERTY — CONDITIONS PRECEDENT—CONSTITUTIONAL PROVISION.—Const., art. VIII, sec. 5, authorizing cities and towns to construct or purchase waterworks upon a majority vote in favor thereof, requires such a vote before condemnation proceedings are started, assuming that purchase includes the power to condemn.

3. EMINENT DOMAIN—DELEGATION OF POWER TO MUNICIPALITY—CONSTRUCTION.—An eminent domain grant is strictly construed for the protection of property rights and must be strictly complied with, even when exercised by a municipal corporation.

4. EMINENT DOMAIN — PROCEEDINGS TO TAKE PROPERTY — RIGHT TO INSTITUTE — MUNICIPALITY—"PURCHASE"—"CONDEMNATION."—Const., art. VIII, sec. 5, authorizing cities and towns to purchase waterworks systems, does not authorize their involuntary acquisition by condemnation.

5. EMINENT DOMAIN—PROCEEDINGS TO TAKE PROPERTY—RIGHT TO INSTITUTE PROCEEDINGS—MUNICIPALITY—"OWNING."—Const. Amend. 1914 to art. VIII, sec. 7, empowering a city to increase its bonded indebtedness for purchasing or owning a waterworks system, does not authorize its acquisition by condemnation; the statute being inapplicable, and the word "owning" insufficient, for that purpose.

Before MEMMINGER, J., Greenville, October, 1915. Reversed.

Action by the Paris Mountain Water Company against the City of Greenville. From judgment dismissing the complaint, the plaintiff appeals. The facts are stated in the opinion.

*Messrs. Cothran, Dean & Cothran* and *McCullough, Martin & Blythe,* for appellant, submit: *The legislation relied on by the city contravenes article VIII, section 1 of the Constitution of 1895. It must be especially noted that the classification of cities for the purpose of municipal legislation, must apply not only to all municipalities that are members of the class at the time, but also to those that may hereafter become so:* 1 Dillon Munic. Corps., sections 151, 152; 43 Atl. 742; 129 Ky. 594, 89 S. W. 673; 64 S. C. 194; 66 S. C. 222. *Even if this legislation had not been incontravention of art. VIII, sec. 1, of the Constitution, it was originally in violation of art. III, sec. 34, subdivisions 2 and 9, and has never been properly re-enacted under art. VI, sec. 7 (the "codification" section), and art. III, secs. 17 and 18 (as to reading in both houses, etc.):* 24 Stats. 867-9; 66 S. C. 219; 60 S. C. 504; 85 S. C. 186, 189; 99 S. C. 377; 51 S. C. 52; 100 S. C. 479, 480. Distinguish 77 S. C. 260; 61 S. C. 205; 58 L. R. A. 687. *Sections 3027-3031 of the Code of 1912, contain matter that was not a part of "the General Statute law of this State then in force;" and such matter was not an "abridgment" nor an "amendment" of any statute then of force, concerning which the codifier might make "recommendations" or "suggestions," nor did he make any such recommendations or suggestions; these sections, therefore, never became law:* South Carolina Constitution of 1895, VI, 5; III, 17 and 18; 66 S. C. 281; 94 S. C. 453; 96 S. C. 313, 319; 75 S. C. 568. *When the codifier takes an unconstitutional statute, void under art. III, sec. 34, and inserts it in his report in the face of the provisions of art. VI, sec. 5, it does not become a valid act without ever having been read over three times on three separate days under the*

*formalities prescribed by art. III, sec. 18.    And the Court will take judicial notice of the House and Senate Journals:* 53 L. R. A. 636.    *A bond issue is necessary and is contemplated—but the legal limit for Greenville has been reached:* Civil Code 1912, sec. 3050; Const., art. VIII, sec. 7; 24 Stats. 955; 27 Stats. 13; 1 Dillon, Munic. Corp. (5th ed.), sec. 33; 2 *Ib.,* sec. 874, 875; Const. 1868, art. IX, sec. 17. *Exceptions 3 and 4: Two elections are necessary, one before such policy is adopted, and one upon the bond issue:* Const. 1895, art. VIII, secs. 5 and 7; art. II, sec. 13; 59 N. E. 350, 361; 156 Md. 104; 51 L. R. A. 722; 21 S. D. 15; 108 N. W. 1063; 22 L. R. A. (N. S.) 478; 91 U. S. 374. *Personal property cannot be condemned:* 32 Cyc. 1264.    *Article VIII, section 5 of the Constitution, does not confer upon cities and towns the power to condemn existing waterworks owned by a private person or corporation:* 10 A. & E. 1054 and 1055; Lewis Em. Domain (3d ed.), secs. 370, 371, 388 and 386; 209 Pa. St. 558; 58 Atl. 922; 47 S. E. 184; 46 N. Y. 546; 7 Am. R. 385; 11 Ohio St. 228; 93 Am. Dec. 726.    *Power to condemn is not included in power to purchase:* 135 N. Y. 4; 7 Rich. Eq. 509; 62 Kan. 819; 62 Pac. 324; 91 U. S. 374; 58 Atl. 877; 37 Ga. 277; 92 Am. Dec. 73, 75; 9 Ga. 341; 42 Ga. 500; 34 Me. 247; 82 Atl. 487; 2 Gray 1; 46 Ga. 43; 37 Am. Dec. 271; 26 Ohio St. 91; 26 Tex. 588; 76 S. W. 888; 48 Am. St. Rep. 132; 169 U. S. 557; 176 U. S. 349; 36 S. C. 445; 224 U. S. 306.    *There is in this State no general eminent domain statute to which the power might be referred,—but only special statutes, applicable separately, to drainage corporations* (Code, secs. 3344, etc.); *to electrice light companies* (Code, sec 3326); *to highways* (Code, secs. 1933, etc.); *to · railroad rights of way* (Code, secs. 3102, etc.), *and to telegraph and telephone companies* (Code, secs. 3318, etc.).    *In such cases even if all power be given and no machinery provided, the power will fail for lack of machinery to enforce it:* 73 S. C. 150, 152. *The composite statutory provision, the act of 1905 (24 Stat.*

*867), incorporated in the Code of 1912 as sections 3027 to 3031, inclusive, and amended by act of 1914 (28 Stat. 499), is void for the reason:* (a) *It is special legislation, offending art. III, section 34 of the Constitution.*    (b) *It attempts to confer upon the cities of Spartanburg, Greenville and Charleston powers not conferred upon other municipalities, which are or may become of the same class as those cities, offending art. VIII, section 1 of the Constitution:* 51 S. C. 52; 59 S. C. 110; 60 S. C. 501; 99 S. C. 377; 100 S. C. 478; 1 Dillon Munc. Corp. (5th ed.) 148, 149, 150, 151, 160; 41 Ohio St. 476; 43 Wash. 61; 221 Ill. 9; 50 Pac. 691; 72 N. E. 399; 91 N. W. 72; 14 L. R. A. 725; 107 N. W. 974; 71 N. W. 941; 66 N. J. L. 582; distinguish 82 S. C. 357. *That the power of condemnation can not be sustained by declaring the limitation contained in section 3031 unconstitutional and giving effect to 3027, 3028, 3029, 3030 as a general law:* 59 S. C. 110; 63 S. C. 75; distinguish 73 S. C. 153.

*Messrs. Oscar Hodges, H. J. Haynsworth* and *J. J. McSwain,* for respondent, cite: *As to whether Code, secs. 3027-3031 constitute a local or special law, and are violative of Const., art. III, sec. 34:* 19 S. C. 114; 26 S. C. 114; 61 S. C. 205; 77 S. C. 260, 356; 96 S. C. 313, *or of Const., art. VIII, sec. 1:* 82 S. C. 357. *Power of condemnation conferred on cities and towns:* Const., art. VIII, sec. 5; 73 S. C. 150; 89 S. C. 545; 91 U. S. 375; 106 Mass. 364; 48 S. C. 55; 89 S. C. 545; 7 S. C. 173. *Preliminary election not necessary to condemnation:* 10 How. 395; 28 L. R. A. (N. S.) 91. *Implied powers:* Cooley Const. Lim. (7th ed.) 98: 4 Wheaton 407; 3 Ill. 79. *Special legislation:* 61 S. C. 205; 77 S. C. 260 and 356; 66 S. C. 220; 99 S. C. 377. *Constitutional powers given municipality:* 73 S. C. 150; 41 S. W. 943; 24 Pac. 716; Dillon Munc. Corp. (5th ed.), sec. 63. *Severable provisions in statutes:* 30 S. C. 368; Cooley Const. Lim. (7th ed.) 246.

The Circuit Judges having been called to the assistance of the Court,

July 24, 1916.

The opinion of the Court *en banc* was delivered by MR. JUSTICE FRASER.

The city of Greenville is supplied with water by the Paris Mountain Water Company, a private corporation. The city desires to own and operate its waterworks. Not being able to agree upon the purchase of plaintiff's system, the city served notice of condemnation proceedings to take the plaintiff's system at a price to be fixed by the juries. The plaintiff then brought suit to enjoin the proceedings. The defendant demurred to the complaint, and upon a hearing on Circuit the complaint was dismissed. From that order this appeal was taken.

1. The appellant attacks the law under which these condemnation proceedings are taken, on the ground that it is special legislation. The Constitution (article VIII, sec 1) says: "The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters may reorganize under the general laws of the State, and when so reorganized their special charters shall cease and determine."

The statute law is set forth in the Code of 1912, secs. 3027-3031, and the act of 1914 amending the same. This question, however, is not affected by the amendment. The amendment of 1914 becomes section 3027 of the Code, according to the express language of the statute of 1914.

The statutes (secs. 3027-3030) provide for a condemnation of property for waterworks, by all municipalities.

Section 3031 provides: "The provisions of sections 3027 to 3030, both inclusive, shall apply only to the cities of Charleston, Greenville, and Spartanburg and to other corporations engaged exclusively in supplying water to said cities and to the inhabitants thereof."

It is claimed that the statute really created a class, though only three cities are mentioned. This position is untenable, as Columbia (admittedly in the class) is omitted from the statute. It is said that Columbia owns its waterworks, and, therefore, is unaffected. It is not what Columbia may want to do, but what Columbia has a right to do, that includes it in, or excludes it from, the class. It may be that Columbia may need a new system or will annex a suburban town having a private waterworks system. Columbia may find it necessary to protect its "watershed" from contamination. In neither event can Columbia condemn, under the statute, and yet Charleston, Greenville, and Spartanburg can condemn under similar circumstances.

Under *Nexsen* v. *Ward,* 96 S. C. 313, 80 S. E. 599, and subsequent cases, the Code not only contains the statutory law, but is the only general statutory law of this State. The unconstitutional features of the original act involved here are not eliminated by the Code. The Code, like all laws, must be read as a whole. The Code makes a general rule that applies to all municipalities in section 3027, but section 3031 confines its operation to Charleston, Greenville, and Spartanburg. It says it shall apply to no other cities. Under no rule of construction can the law apply to any other city when the statute says it shall not apply. The rule is well known and indisputable that in statutes and wills a subsequent provision governs, and when in conflict, controls a former provision. If the statute had provided a general rule and exempted three cities entirely from its operation, then it might have been said that the exemption alone shall fail. Here the statute declares it shall not apply as a general rule, and that is fatal.

2. Conceding, for the present, that the right to "purchase and construct" carries with it the right to "condemn," *i. e.,* "condemnation" is "purchase" and still the Constitution says (article VIII, sec. 5) : "No such construction or purchase shall be made except upon a majority vote of the electors in said cities or towns who are qualified to vote on the bonded indebtedness of said cities and towns."

There has been no election. The right to purchase is based upon a vote and if "purchase" means "condemn," then there can be no condemnation, except upon a vote. It is said the voter wants to know the price before he votes to buy. The first vote simply gives power to purchase. It binds no one to buy. He has the right to refuse to buy when he votes for or against the bonds. The voter is not bound to vote for the bonds after he learns the price. If a man wants a piece of property, then he considers the price. If he does not want it, the price does not affect him. That is the logical order, but whether it is logical or illogical, desirable or undesirable, a vote is necessary before a municipality can bind itself by a contract of purchase, or the "owner" by condemnation. When a man calls upon a Court to enforce a right that he has not now, but hopes to have in the future, the Courts should say to him, "When your right accrues, it will be time enough to seek its enforcement." To illustrate : A corporation is formed to carry freight by water. Its management desires to extend its business by a railroad, but first desires to know the cost of construction of a railroad over the proposed route. Could any one think that the Courts would permit the power of condemnation under the promise that if the prices should be within its reach it would apply for an extension of its charter and in future secure the right it now seeks to enforce? Surely no Court would aid condemnation until the amendment of the charter. Of course, in case of a tentative contract of purchase, the vote to purchase and the vote for bonds

may be held at the same time.   The same will apply to a proposed construction.

3. In Lewis on Eminent Domain (1st ed.), sec. 254, it is said: "All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other."

"An act of this sort," says Bland, J., "deserves no favor; to construe it liberally would be sinning against the rights of property."

The taking of private property for public use should be done in strict accord with law and only when all the formalities are complied with.   It is said individual whim must not stand in the way of public progress and public good. This is true, but there is no public good that is not dearly bought, too dearly at the price of impaired private rights. The line that defines the boundary between private rights and public good should be clearly marked by law and strictly observed.   Security in the enjoyment of private property, when acquired, is public good and is that public good, and that supreme public good, that makes all other public good desirable.   Security in possession and enjoyment is the incentive to acquirement.   Take away the one and you destroy the other.

The condemning corporation should not complain that it is difficult to take property from the possession of another. It should remember that as soon as it takes (according to law) the property of another, its own interest in the security of property will shift and the right to hold that which it has taken will become of paramount importance to the condemning corporation.   The fact that the corporation that seeks to condemn is a governmental agency, may be a protection and then again it may not.

4. It is said, however, that even if the statute is unconstitutional, the Constitution itself gives the right of condemnation when it gives the right to purchase; that condemnation is purchase.

In *Cummings* v. *Coleman,* 28 S. C. Eq. (7 Rich. Eq.) 518, 62 Am. Dec. 402, it is said:

"A general rule in the interpretation of statutes is to define the words employed by the legislature, in their popular sense."

The same rule applies to Constitutions (Kent's Com., vol. IV, p. 441):

"A purchase in the ordinary and popular acceptation of the term is the transmission of property from one person to another, by their voluntary act and agreement, founded on a valuable consideration."

Condemnation has a valuable consideration, but it is in its nature not voluntary. There may be something in the context or general surroundings to show that the word is not used in its proper sense. There is nothing in the context to show that the word "purchase" is not used in its popular sense. The surroundings are the other way. If the State could lend to a private corporation its right of eminent domain for the purpose of supplying its citizens with necessities, comforts, or conveniences; allow the private interest to assume all the risks of a new business and all of its expense and then, when "the luxuries of yesterday have become necessities of today" and the business is on a secure basis and the patrons secured, who can no longer, or will no longer, be deprived of the service, and then take over the business and carry on that same business in the same way and take to itself the profits at such price as its taxpayers are willing to pay, the intention to do so must appear in express words or by necessary implication. This is no reflection on the juries. They are in the main honest and when they err, it is because they do not understand. It is no reflection on

the judiciary when the statute disqualifies a Judge who is related by blood or marriage, within the sixth degree, to either party. The surrounding circumstances do not suggest that "purchase" means "condemnation." The right of the lengislature to add the power to "condemn" to the right to "purchase and construct" is not before the Court and not decided.

It is said, however, that the construction has been amended and in the amendment of 1905 the word "owning" is used and "owning" is a broader word than "purchase" or "construct." That is true, but the amendments refer only to the limit of bonded indebtedness. The reference to the amount of bonded indebtedness, and not to the power of municipal ownership. The word "owner" is sometimes used to mark a distinction between one who has the fee and one who has the use. Condemnation does not ordinarily carry the fee; it merely imposes a use. Bouvier Law Dictionary: "The right of the owner is more extended than that of him who has only the use." This is especially true in condemnation proceedings, where the word "owner" is used to designate the one whose property is condemned and not the one who is seeking to condemn. It would be strange if it should be held that the use of the word "owning" gives the power to condemn when "owner" is the person whose property is condemned. No such construction is admissible. The amendment does not apply, and if it did apply, the word is insufficient.

The judgment is reversed.

MR. JUSTICE HYDRICK and CIRCUIT JUDGES WILSON, DEVORE, SHIPP, BOWMAN, MAULDIN, SMITH and PEURIFOY, concur in the opinion of the Court.

CIRCUIT JUDGES PRINCE, RICE and MOORE concur in subdivisions 1, 2 and 3 of the opinion of the Court (Syllabi 1, 2, 3), and in the result, but dissent from subdivision 4 of the opinion (Syllabi 4 and 5).

MR. CHIEF JUSTICE GARY, *dissenting.* This is an action to enjoin condemnation proceedings instituted by the defendant.

The facts out of which the controversy arose are thus stated in the decree of his Honor, the Circuit Judge:

"The authorities of the city of Greenville desire to acquire the water plant of the Paris Mountain Water Company, now established, and furnishing water to said city. The water company wants something like $1,000,000 for the property; the city authorities do not agree that this is a reasonable price; the water company will not sell at a price which the city authorities will agree is reasonable; so the city resorts to condemnation—that is, to force the company to sell, at a price to be fixed, in condemnation proceedings. This power of condemnation is given to the cities of Greenville, Charleston, and Spartanburg by sections 3027-3031 (as amended by an act of 1914, 28 Stat. 499), Code 1912. The city gave the water company notice that it was about to proceed under this power, whereupon the water company got up a complaint against the city claiming therein that these laws are unconstitutional, as in violation of section 34, article III, of the Constitution, as being local or special laws, and of section 1, article VIII, as giving power to these three cities not given to other cities of the same class, and, by the proposed amendment to the complaint, that these laws are further constitutionally objectionable as in violation of sections 17 and 18, article III, in reference to the title and method of passage of legislative acts, and further claiming in the complaint that as the city could not, under the provisions of the Constitution, set out in the complaint, pay for the plant, even if condemned, without exceeding the bonded indebtedness allowed by law, and could not proceed to condemn without a vote of the pepole upon the question, that, therefore, it is wrong and inequitable that the city should be allowed to go ahead and condemn without taking such a vote, thereby the water company claims, subjecting it to

having its property undervalued by a local jury, to the injury of its credit, and at the expense of a litigation which must prove fruitless.

"Upon this complaint the water company obtained from Special Judge Ansel, at the last term of Court, a temporary restraining order preventing the city from going on with the condemnation. The city now comes in with a demurrer, which says that, admitting all the facts set out in the complaint, that yet, as a matter of law, the complaint states no cause for equitable interference, and the question is raised, as to the claim of the complaint, that the city could not pay for the waterworks, that, as a matter of law, under the amendment to the Constitution of 1911, all limit as to municipal bonded indebtedness is removed when the proceeds of the bonds are to be used for the purchase of waterworks, and that, anyhow, this objection is totally premature, as it is not now for the water company to say whether the city can pay the price fixed in the condemnation proceedings as an objection thereto; furthermore, that as a vote of the people has to be taken as to whether the condemnation price shall be paid, and the bonds issued therefor, no intelligent vote can be taken until the price is fixed by condemnation proceedings, as the people would not know for what price the plant was to be had nor the amount of the proposed bond issue.

"As to the constitutional objections raised in the complaint to sections 3027-3031, the city claims that these are not well founded, as these laws, the city claims, are neither local nor special laws, nor giving to the three cities named special powers not given all cities of the same class, and as to the objections raised by the proposed amendment, as they all relate to the method of the passage of the laws relied upon by the city, that, as they are included in the Code of 1912, such objections are not available."

His Honor, the Circuit Judge, sustained the demurrer, and dismissed the complaint, and the plaintiff appealed.

The first question that will be consider is: Whether there was error on the part of his Honor, the Circuit Judge, in refusing to allow the plaintiff to amend its complaint by inserting the following proposed paragraph:

"And the plaintiff alleges further that the said legislation was not properly included nor enacted in the Code of 1912, not being a part of the General Statute Laws of this State then in force, not being properly included in the report of the Code Commissioner, and not being an abridgment or amendment of any existing legislation nor properly suggested by him as such, and not being read over three times nor passed according to the forms of said Constitution for the enactment of laws, nor under the formalities prescribed in said Constitution for the passing of laws in article III, sections 17 and 18, of said Constitution, and is, therefore, unconstitutional and void under said sections and under section 5 of article VI of said Constitution."

It is only necessary to cite the case of *Nexsen* v. *Ward,* 96 S. C. 313, 80 S. E. 599, to show that the exception raising this question cannot be sustained. Furthermore, even if there was a failure to comply with the requirements of the Constitution in the particulars specified in the exceptions, the act of 1914 amending section 3027 of the Code of Laws 1912 authorized the condemnation proceedings.

The next question to be determined is whether sections 3027 to 3031, Code of Laws 1912, contravene section 1, article VIII, of the Constitution, in that they confer powers upon the three cities of Charleston, Spartanburg and Greenville, not given to other corporations of the same class.

Section 3027 of the Code of Laws, after its amendment in 1914, now reads as follows:

"Any municipal corporation in this State desiring to establish waterworks or to enlarge or extend the same, whether they own or operate the plant or not, shall have the right to condemn lands, water rights and water privileges, or any

other property, including existing waterworks or pipe lines, or any part thereof, necessary for the purpose of establishing, maintaining, extending or operating waterworks plants for supplying water to said municipal corporations and to citizens thereof : *Provided,* That proper compensation be first made to the owners thereof, such condemnation to be made in the same manner as condemnations are now made by railroad corporations."

Section 3028 is as follows :

"Any other corporation now engaged exclusively in the business of supplying water for fire, sanitary or domestic purposes in this State, or which may intend to engage exclusively in the business of supplying water for such purposes, shall have the same rights and same powers as are herein conferred upon municipal corporations in section 3027."

Section 3029 relates to damages to land, which it declares cannot be condemned, unless it is necessary for the proper use and maintenance of the waterworks.

Section 3030 is as follows :

"The condemnation, therefore, is to be made in the same manner and same way as provided * * * in sections 2472 to 2484, inclusive, of this Code." ·

Section 3031 is as follows :

"The provisions of sections 3027 to 3030, both inclusive, shall apply only to the cities of Charleston, Greenville, and Spartanburg, and to other corporations engaged exclusively in supplying water to said cities and to the inhabitants thereof."

Section 1, article VIII, of the Constitution provides that :

"The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class."

Section 5, article VIII, of the Constitution provides that :

"Cities and towns may acquire by construction or pur-

chase, and may operate waterworks systems and plants for furnishing lights : * * * *Provided,* That no such construction or purchase shall be made except upon a majority vote of the electors in said cities or towns, who are qualified to vote on the bonded indebtedness of said cities or towns."

The following amendment to section 7, article VII, was adopted in 1905:

"*Provided, further,* That the limitation imposed by this section, and by section 5, article X, of this Constitution, shall not apply to bonded indebtedness incurred by the city of Greenville, but said city of Greenville may increase its bonded indebtedness in the manner provided by said section of said article to an amount not exceeding 15 per cent. of. the value of all taxable property therein, where the proceeds of said bonds are applied solely to the payment of past indebtedness to expenses and liabilities incurred or to be incurred in the improvement of streets and sidewalks, and for providing sewerage for said city or any part thereof, for purchasing, establishing, owning or operating waterworks or electric light plants."

In 1911, section 7, article VIII, of the Constitution was also amended by adding thereto the following:

"*Provided, further,* That the limitation imposed by this section and by section 5, article X, of this Constitution, shall not apply to the bonded indebtedness in and by any municipal corporation when the proceeds of said bonds are applied solely and exclusively to the purchase, establishment and maintenance of a waterworks plant, or sewerage system, or lighting plant, and when the question of incurring such indebtedness is submitted to the freeholders and qualified voters of such municipality, as provided in the Constitution upon the question of other bonded indebtedness."

The provisions of the amendment which was added in 1911 show that two important changes were contemplated: First, the repeal of the limitation theretofore imposed upon the power of municipal corporations to incur a bonded

indebtedness when the proceeds of the bonds are applied solely and exclusively for the purchase, establishment, and maintenance of a waterworks plant, etc.; and, second, to confer upon any and every municipal corporation in the State the power to incur a bonded indebtedness, without limitation as to the amount thereof, provided the proceeds of the bonds are applied solely and exclusively for the purchase, establishment, and maintenance of a waterworks plant. *Lillard* v. *Melton,* 103 S. C. 10, 87 S. E. 421.

If this is the correct construction of the said amendment, then the provision in section 1, article VIII, that the General Assembly should provide by general laws for the organization and classification of municipal corporations is inapplicable, as under said construction no municipal corporation would have any powers or be subject to any restrictions different from those affecting all municipal corporations in the State.

Section 3031 of the Code of Laws, which provides that the provisions of sections 3027 to 3030 should apply only to the cities of Charleston, Greenville, and Spartanburg, did not confer upon those cities any rights which they did not have already under the said amendment to the Constitution in 1911. What we have just said disposes of the question whether his Honor, the presiding Judge, erred in ruling that sections 3027 to 3031 are obnoxious to article III, section 34, subdivisions 2 and 9, of the Constitution as to classification.

The next question is whether his Honor, the presiding Judge, erred in ruling that the condemnation statutes are not in contravention of the Constitution.

It will be observed that section 5, article VIII, of the Constitution uses the words "construction" and "purchase," and that the constitutional amendment in 1905 provides that the limitations imposed by the sections therein mentioned should not apply to the bonded indebtedness incurred by the city of Greenville when the proceeds of the bonds are applied solely

for purchasing, establishing, owning, or operating water-works, and that the constitutional amendment in 1911 provides that the limitations should not apply when the proceeds of the bonds are applied solely and exclusively for the purchase, establishment, and maintenance of the waterworks plant.

There can be no doubt that the words "construction" and "purchase" in section 5, article VIII, and the words "purchasing, establishing, owning or operating" in the amendment of 1905, and the words "purchase, establishment and maintenance" in the amendment of 1911, were intended to confer the same powers and to accomplish the same result.

In the interpretation of the words "construction," "purchase," "establish," "own," "operate," and "maintain," they should be construed together and not singly. Their evident intention was to empower the municipality to acquire ownership of the waterworks plant in any manner authorized by law. There is another reason why the exceptions raising this question cannot be sustained. The power of the legislature is plenary and unrestricted, except in so far as limitations are imposed upon its action by the Constitution. *State* v. *Aiken,* 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345; *Carrison* v. *Kershaw County,* 83 S. C. 88, 64 S. E. 1018; *Lillard* v. *Melton,* 103 S. C. 10, 87 S. E. 421. In the absence of constitutional limitations restricting its powers, the legislature could have conferred upon the city of Greenville the right to resort to condemnation proceedings, and it still has such power, unless the authority to acquire ownership by condemnation proceedings is inconsistent with the power to construct, purchase, establish, or own a waterworks plant. *Norton* v. *Brabham,* 21 S. C. 375.

The use of different words for the purpose of conferring upon municipal corporations the power to acquire ownership in waterworks plants shows that the intention of the amendments to the Constitution was to remove all obstacles to the accomplishment of that object, and cannot be success-

fully contended that condemnation proceedings are inconsistent with those words; but, on the contrary, are in furtherance of their plain and obvious intention.

In *Bascom* v. *Oconee,* 48 S. C. 55, 25 S. E. 984, it was held that power conferred upon the county commissioners to open and establish a public road with a bridge over a stream included the authority to purchase the bridge already constructed.    In *Dick* v. *Scarborough,* 73 S. C. 153, 53 S. E. 87, the Court says:

"It is true, power to hold an election to authorize the issuance of bonds to purchase waterworks is not given in this statute by use of the word 'purchase,' but 'establishing' municipal waterworks may be accomplished by purchase as well as by construction.    Establishing waterworks obviously here means the acquirement and inauguration of a system of waterworks as a municipal enterprise and as municipal property by either construction or purchase."

In *Verner* v. *Muller,* 89 S. C. 545, 72 S. E. 393, the Court uses this language:

"The purpose of the Constitution (section 6, article X) was to leave the legislature free to authorize counties and townships to establish and maintain public roads, buildings and bridges.    The word 'build' may be employed in the sense of obtain, secure, or acquire, as well as the ordinary meaning."

The next question is whether there was error in the ruling that the allegation of the complaint that the city has not sufficient funds to pay for the property sought to be condemned states a good ground for injunction.    The question is not only premature, but as there is no limitation on the power of the city of Greenville to contract a bonded indebtedness in the manner provided by law, it is unreasonable to suppose that it would not be able to meet any obligation it might contract.    Furthermore, such question pertains to the rem-

edy, for the enforcement of the condemnation proceedings, and presupposes authority on the part of the city to resort to condemnation proceedings. Therefore it does not properly arise until it is determined whether the defendant has the right to condemn. If it has not such right, then the question is merely speculative, and is not properly before the Court for consideration; while, on the other hand, if it has the power, the Court would enjoin the defendant from taking the property of the plaintiff without just compensation being first made therefor. But it is not a taking of property without compensation merely to ascertain the amount of compensation to be paid, in case it is determined. in the manner provided by the Constitution, that the qualified electors are in favor of the city becoming the owners of the plaintiff's waterworks plant. Section 5, article VIII, empowers cities and towns to acquire by construction or purchase waterworks plants: *Provided,* That no such construction or purchase shall be made except upon a majority vote of the electors of said cities or towns, who are qualified to vote on the bonded indebtedness of said cites or towns. Section 7, article VIII, provides that no city or town shall incur any bonded debt and unless a majority of the electors voting on the question shall be in favor of creating such bonded debt none shall be created.

The intention of these sections is that the result in each instance shall be determined by a majority of the qualified electors voting upon the respective questions, and there is no good reason why both questions cannot be submitted to the qualified electors, provided the questions are so submitted that the electors shall be able to vote on each question.

The next question is whether there was error in the ruling that it was not necessary tc hold two elections—one upon the question of adopting the policy of public ownership, and the other as to the issue of bonds—before resorting to condemnation proceedings. The condemnation proceedings are

only intended at this time to determine the amount of damages to be paid by the defendant in order to acquire the ownership of the waterworks plant, and such question is preliminary in its nature   After this question has been settled then the question whether the voters are in favor of acquiring the ownership of the plant, and, if so, whether bonds should be issued for such purpose, will be determined in the manner provided by the Constitution.

It is contended · that the condemnation proceedings are unconstitutional.   It is, however, only necessary to cite the case of *Railway* v. *Ellen,* 95 S. C. 68, 78 S. E. 963, Ann. Cas. 1915b, 1042, to show that the exceptions raising this question cannot be sustained.

The next assignment of error is because his Honor, the Circuit Judge, should have overruled the demurrer on the ground that the complaint states a cause of action for equitable relief, against the condemnation of the personal property described in the complaint.   The Constitution confers upon the city the power to acquire ownership of the plaintiff's waterworks plant, and that is the only property the defendant is seeking to condemn.

The last question is whether the plaintiff is entitled to an injunction on the ground that the city has already incurred a bonded indebtedness to the exent of 15 per cent. of the value of the taxable property therein, and that there is no legislation authorizing the city to exceed that amount.

In their argument the appellant's attorneys thus state the proposition for which they contend:

"The complaint alleges and the demurrer admits that a bond issue is necessary and is actually contemplated for the purpose of raising funds to pay for plaintiff's plant, and such bond issue is impossible because section 3050 of the Code of 1912 fixes the legal limit of bonded indebtedness for the city of Greenville at 15 per cent. of the value of its taxable property; and said limit has been reached and there has been no further legislation authorizing any issue beyond

15 per cent., although such legislation is absolutely essential, and although we concede that the constitutional limitation upon the power of the legislature has been removed, and it may now enact such legislation if it sees fit."

Section 3050 of the Code of Laws merely enacts in statutory form the exact words of the constitutional amendment of 1905 hereinbefore set out.    By reference to that amendment it will be seen that it provides that the city of Greenville may increase its bonded indebtedness to an amount not exceeding 15 per cent. of the value of taxable property therein.    The effect of the amendment of 1911 was to repeal so much of the amendment of 1905 as placed a limit on the power of the city to incur a bonded indebtedness for the purposes therein set forth, so that the amendment of 1905 must now be read as empowering the city of Greenville to increase its bonded indebtedness to an unlimited amount. It cannot be successfully contended that it was necessary for legislation to give force and effect to this power, as there is nothing whatever indicating such intention.    Furthermore, the amendment of 1911 repealed so much of section 3050 as limited the power of the city to incur a bonded indebtedness, and that section must now be read as authorizing the city to increase its bonded debt for the purposes therein mentioned, to an unlimited amount.

For these reasons I dissent.

Messrs. Justices Watts and Gage, and Circuit Judges Sease and Gary concur in the dissenting opinion delivered by the Chief Justice.