STATE *EX RELATIONE* C. C. & C. RAILROAD COMPANY v. WHITESIDES.

1. Where a public officer refuses to discharge a ministerial duty necessary to the enjoyment of a legal right by an individual who has no other adequate and sufficient remedy, *mandamus* will lie.

2. But where a township voted a subscription to a railroad under an unconstitutional statute, and the county commissioners, as the agents of such township, issued bonds in payment therefor, and the county commissioners, assuming to act as such agents, made a contract with a trust company whereby the trust company took possession of said bonds and agreed to deliver them to a construction company, whenever the engineer of the railroad company certified that the railroad was completed through such township, and when this certificate was countersigned by the chairman of the board of county commissioners, attested by the clerk—the subscription, the issue of the bonds, and the trust indenture being all unauthorized and void, *mandamus* will not lie after the railroad has been completed, to compel such chairman to countersign, and such clerk to attest his signature to, the certificate of the chief engineer that the road has been so completed.

3. But this township—an incorporated territorial community, without any corporate purpose, and therefore without authority to incur a debt or impose a tax—having declared its willingness to be taxed to aid in the construction of a railroad through its limits, such railroad is as to such township a public purpose, and the legislature may, in its sovereign capacity, impose upon such community a tax to pay for such subscription and accept the bonds so illegally issued, as the representatives of the debt of the township so created by the legislature for this public purpose.    And this was done by the act of December 22, 1888 (20 *Stat.*, 12), which is constitutional and valid.

4. This statute, however, was not intended to validate the former unconstitutional statute, nor can the legislature validate acts which it was without power previously to authorize.

This was a petition to this court by the Charleston, Cincinnati & Chicago Railroad Company, The Massachusetts & Southern Construction Company, and The Boston Safe Deposit and Trust Company for a writ of *mandamus* to compel the chairman and the clerk of the board of county commissioners of York County to affix their signatures to a certificate by the chief engineer of said railroad company that said railroad had been completed through Broad River Township in York County. The opinion sufficiently states the case, but in connection herewith see the succeeding case of *State ex rel. Dickinson* v. *Neely*.

*Messrs. James F. Hart, Sheppard Bros.*, and *R. W. Shand*, for relators.

*Messrs. Wilson, Wilson & McDow, D. E. Finley*, and *Wm. B. McCaw*, contra.

April 15, 1889. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The inhabitants of Broad River Township in York County, under the provisions of the amended charter of the Georgetown & North Carolina Narrow Gauge Railroad Company—1883—which company afterwards became the Charleston, Cincinnati & Chicago Railroad Company, voted a subscription of $24,000 to said road, payable in 7 per cent. coupon bonds, upon the authority of which the county commissioners of said county executed the necessary bonds for the payment of said subscription.

These bonds, by an arrangement between the parties, were placed in the possession of the relator, the "Boston Safe Deposit and Trust Company," to be held until the road was completed, as follows, to wit: five miles from the township line, between Cherokee and Broad River, when, upon a certificate of that fact by the engineer of the Massachusetts and Southern Construction Company, endorsed by the chairman of the county commissioners, his signature attested by the clerk of the board, being presented to said trust company, $12,000 of said bonds were to be delivered to the Massachusetts and Southern Construction Company, and upon a similar certificate that the road had been com-

pleted through said township, the remaining $12,000 were to be delivered to said construction company.

This arrangement was reduced to writing and signed by a majority of the county commissioners, and in accordance therewith the $24,000 of bonds were placed in the hands of the trust company. Upon the completion of the road through the township, the engineer executed the required certificate as above, but the respondent, Whitesides, county chairman aforesaid, declined to endorse it, for other reasons, however, than that said road had not been completed. And the clerk of the board also declared that he would not in any event attest the signature of the chairman.

Under these circumstances the relators commenced the proceedings now before us in the original jurisdiction of this court, praying that a *mandamus* do issue commanding said chairman to endorse the certificates of the engineer, and said clerk to attest his signature to said endorsement, as stipulated, so that the said trust company might be authorized to deliver the bonds mentioned to the said construction company.

There is no serious dispute as to the main facts of the case, and these are sufficiently stated above. The difficulty, however, grows out of the legal questions raised, and these involve primarily a discussion of the law of *mandamus*, and its application to these conceded facts ; and secondly, the constitutionality of the recent act of the legislature, known as "An act to provide for the payment of township bonds, issued in aid of railroads in this State. Approved December 22, 1888." 20 Stat., 12. These questions will be considered in their order.

The principles which govern in *mandamus* cases, especially where the proceeding is against a public officer, are very plain and simple, and are within a very narrow compass ; so much so as to need no elaboration here nor the citation of authorities. They may be briefly stated thus : Where a party has a legal right, to the enjoyment of which the discharge of a ministerial duty on the part of a public officer is necessary, and he has no other adequate remedy, in case the officer refuses to discharge this duty, *mandamus* is the proper proceeding. *High Ex. Leg. Rem.*, section 34 *et 'seq.* This writ was once a prerogative writ,

and in England was supposed to issue at the instance of the crown, to meet and remedy otherwise remediless cases at his discretion. But in this country it has lost its prerogative character, and though issued in the name of the State, yet it belongs to the courts, and has become a form of action, governed by established rules and applied for and issued under established forms. Upon application for this writ against a public officer, the questions to be considered are: 1st. Is the duty claimed a ministerial duty? 2nd. Has the petitioner a legal right, for the enjoyment, protection, or redress of which the discharge of said duty is necessary? 3rd. Has he no other adequate and sufficient remedy? *High*, section 10. And these are the questions before us.

The petitioners ask that the chairman of the county commissioners of York County shall be required to endorse the certificate of the engineer, *supra*, and that the clerk of the board shall attest his signature. Can the performance of these acts be ordered as ministerial duties? What is a ministerial duty on the part of a public officer? We think it may be defined briefly, yet fully, to be some duty imposed expressly by law, not by contract (*High*, section 25); or arising necessarily as an incident to the office, involving no discretion in its exercise, but mandatory and imperative. *High*, section 42. Now, is the duty claimed here by the petitioners at the hands of the respondents a duty of that character? There is certainly no act or law of force expressly imposing this duty upon them. Nor is it a duty necessarily arising as an incident to the offices which they hold. Nor was it contracted in furtherance of any legal duty attempted by them, and which cannot be now completed without the performance of this. Possibly it might be, if the act of assembly under which Broad River Township subscribed to the railroad had been constitutional and valid. In such case, the county commissioners having been declared the corporate agents of the township, charged with the duty of issuing the subscription bonds, and of otherwise seeing to the proper protection of said township in the delivery of said bonds, a contract of the kind mentioned above, to be performed upon the completion of the road, could be urged as a ministerial duty.

But such is not the state of facts in the case. On the con-

trary, under the recent case of *Floyd* v. *Perrin, ante* 1,[1] Broad River Township had no power to vote the subscription in question. Nor had the county commissioners any power to issue the bonds mentioned, nor to make officially the contract relied upon. The whole transaction, from beginning to end, was *ultra vires*, a nullity, because not in pursuance of any duty imposed by law upon said commissioners. If there be any duty at all, it is one arising out of individual contract. This being so, we do not see how any ministerial duty, in the sense as defined above, could attach.

It is said, however, that the recent act, *supra*, has validated these bonds, and has legalized all the proceedings under which they were executed, and the conditions upon which they were to be delivered to the railroad, including the contract to have the certificate of the engineer endorsed by the chairman and attested by the clerk. We think this is a mistake. We do not understand that the act of 1888, *supra*, has had that effect; nor was such its intention, in so far as the proceedings of the different townships were concerned. That act, as we suppose, was intended to authorize the levying of a tax in aid of certain railroads which certain townships in the State, by the action of their inhabitants, had substantially expressed a desire should be aided; and it was enacted not to validate previous illegal legislation and acts done under such legislation, but as an independent act for a public purpose, and within, as was supposed, the unquestioned power of the general assembly, to wit, to authorize taxation for a public purpose. And the amount proposed to be subscribed by the townships in furtherance of this purpose, represented by the bonds issued, was taken as a basis of the aid to be given, and was declared as a debt upon said townships, as indicative of the source from which the tax was to come, affording the aid granted.

It is urged, however, that this act is unconstitutional, and the argument on both sides has been mainly addressed to this question. In fact, it is obvious that the principal object of this proceeding is to obtain a deliverance from this court upon that precise question. From our view of the purpose of the act, as stated above, we do not think that this question, whether decided the

---

[1] And see, too, *Whitesides* v. *Neely, ante* 31.—REPORTER.

one way or the other, would determine the issue whether or not the writ prayed for should be granted, and therefore we do not regard the adjudication of this question as absolutely essential to the surface object of this proceeding. It is, however, raised in the case, and under the constitution it is perhaps our duty to adjudicate it, and especially we have so felt in consideration of its importance to our people and of the large interests involved. We have therefore declined to pass it by and have carefully considered it, reaching the conclusion that it is constitutional and valid—not, however, on the ground urged and contested so elaborately and ably by counsel, to wit, that it was a validating act; but upon another ground, which we will now state.

We think that there can be no doubt that the general assembly has the power to authorize taxation for any public purpose. In fact, that, in the absence of a constitutional inhibition, this power is inherent and unlimited, with no check except the intelligence of the representative, and the ballot-box of the elector. *Cool. Con. Lim.*, and the cases there cited; *Feldman* v. *City Council*, 23 S. C., 57. Now, was the act in question passed to promote a public purpose, and within the domain of legislative action? Was this the object the tax authorized? The object of the act was to aid the building of certain railroads in the State, which certain townships had without authority of law contracted to aid. Now, railroads have been declared by the courts in most of the States, our own included, and by the Supreme Court of the United States, as improved highways, and therefore as much entitled to be aided by the taxing power as ordinary highways. *Dill. Mun. Corp.* (3rd edit.), sec. 158; *Cooley* (2nd edit.), chapter 4. This may have been doubted once, and, if it was an open question, might still be doubted; but the decisions in that direction have been so numerous and so uniform that, to use the language of Judge Dillon: "If they have not terminated doubt, they have at least ended judicial discussion."

The subject matter, then, of this act was within the range of a public purpose, and so far legitimate; but it may be urged that the purpose here being confined to mere townships, limited localities, and not extending to the public at large, could not fall within the doctrine above. What is the meaning of the term "pub-

lic" ? This term is opposed to the term *private*, and, according to the best lexicographers, means "pertaining to, or belonging to, the people, relating to a nation, State, or community." But to make a matter a public matter, it need not pertain to the whole nation or State. It is sufficient if it pertains to any separate or distinct portion thereof or community. For instance, the State is divided into counties, and there may be matters affecting one county and not others, as the building of a jail, a court house, and such other matters, yet it could not be said that for this reason they were not public matters. So the counties have been divided into townships, which at one time for a short period were municipal corporations for certain purposes. These corporations, it is true, have been vacated, but the territorial divisions, with names and defined boundaries, have been retained, thus separating the counties into distinct communities, which have been frequently recognized as such in legislative enactments.

Now, the inhabitants of many of these townships having voted as distinct communities subscriptions to railroads proposed to be constructed through or near them, not for the private interests of particular individuals, but for the general good, we think the general assembly was warranted in assuming that here was a public purpose, which, in accordance with the expressed wish of these communities, could be sustained by its taxing power, and even without this expressed desire. There is high authority for saying that such legislation would be valid with or without the consent of the people. The only check to an unwise exercise thereof, as we have said above, being not the courts, but the intelligence of the general assembly and the ballot-box. But here the people of the townships had given their consent, and had declared by their votes, that a public purpose was present that deserved support. This, it seems to us, was a sufficient foundation for the passage of the act.

For these reasons we think the act in question is constitutional and valid.

But conceding this, we do not see how it warrants the *mandamus* prayed for. There is certainly nothing in this act expressly commanding the respondents to perform the stipulations of the contract upon which this proceeding is based, nor is there any

duty imposed thereby upon the respondents to which the suggested acts are necessary incidents, and therefore there is no ministerial duty in this regard attaching to them to be enforced by the writ prayed for.

We have not found it necessary to discuss fully the question whether the recent act could be sustained as a validating act, as contended by the petitioners, but we have considered it under the light of the argument and the numerous cases cited, and we think the position is untenable. The pivotal point in a healing or validating statute is that it must be confined to acts which the legislature could previously have authorized. This is wanting here. The legislature can under no circumstances authorize the violation of the constitution or validate an unconstitutional act. *Duke* v. *County of Williamsburg*, 21 S. C., 414; *Cool. Const. Lim.*, 382.

The petition must therefore be dismissed, and it is so adjudged and decreed.

MR. JUSTICE MCIVER concurred.

MR. JUSTICE MCGOWAN. I concur, the meaning of the opinion of the court being that there is no necessity for the issue of any new bonds; but "the debt" fixed upon the several townships by the act of 1888 shall be represented by the bonds heretofore issued, to be paid according to the provisions of the act; and I am authorized to say that such is the view of the other members of the court.