9947

## PARIS MOUNTAIN WATER CO. v. CITY OF GREENVILLE *ET AL.*

(96 S. E. 545.)

1. WATERS AND WATERCOURSES — WATERWORKS — BOND ELECTIONS — MAJORITY.—Elections under Const., art. VIII, sec. 5, providing cities may acquire waterworks "upon a majority vote of the electors" "qualified to vote on the bonded indebtedness of the city," and sec. 7, requiring submission as in special elections, are controlled by art. II, sec. 13, providing that a majority of those voting at special elections is sufficient to authorize city bonds.

2. WATERS AND WATERCOURSES—CONDEMNATION OF WATERWORKS—CONSTRUCTION OF STATUTE—"MAJORITY OF QUALIFIED ELECTORS."—Civ. Code 1912, sec. 3015 (act March 6, 1916; 29 St. at Large, p. 910), providing that the city's policy toward condemnation of a waterworks shall be fixed "by a majority of the qualified electors," will not be construed to mean a majority of those voting and not voting, thus making a legislative change of the general rule stated in the Constitution.

3. ELECTIONS—ELECTORS NOT VOTING—CONSENT TO WILL OF MAJORITY—PRESUMPTIONS.—Qualified electors who have absented themselves from an election duly called are presumed to assent to the express will of the majority of those voting, unless the law providing for the election otherwise declares.

4. MUNICIPAL CORPORATIONS—WATER AND LIGHTS—SERVING PERSONS OUTSIDE CITY.—Const., art. VIII, sec. 5, providing that cities may furnish water to individuals, firms, and private corporations, does not limit the service to those situated within the city limits.

5. MUNICIPAL CORPORATIONS — ORGANIZATION — AUTHORITY OF LEGISLATURE.—A town is a creature of the legislature, which may, within constitutional limitations, define the powers of the town.

6. EMINENT DOMAIN—CONDEMNATION OF WATERWORKS—INJUNCTION—PLEADING.—In a proceeding to enjoin a city from condemning a waterworks, the objection in the complaint that the city intends to violate the provisions of Civ. Code 1912, sec. 3025, authorizing furnishing water to persons without the corporate limits, but contiguous thereto, should point out the noncontiguous territory to be served.

7. CONSTITUTIONAL LAW—ENCROACHMENT ON LEGISLATURE—POLICY OF LAW—MUNICIPAL TRADING.—The suggestion that a city sought to be enjoined from condemning a waterworks located outside of the city limits, for its own use, and for outside service, will go into municipal trading, raises a question of policy, not of validity of Civ. Code 1912, sec. 3025, authorizing such service.

8. Waters and Watercourses—Waterworks—Right of Condemnation—Defense.—The fundamental right of a city to acquire by condemnation a waterworks plant cannot be defeated by the suggestion that persons outside of the city now supplied by contract may be hereafter cut off from use of water.

9. Constitutional Law—Self-Executing Provisions—Municipal Corporations—Acquiring Waterworks.—Const., art. VIII, secs. 5, 7, providing cities may acquire waterworks and provide for payment therefor, are self-executing.

10. Eminent Domain—Condemnation—Delegation of Power to City.—The primary right of a city to condemn a waterworks rests in eminent domain vested in the State not created by the Constitution, but affirmed by Const., art XIV, and limited in its exercise by art. I, sec. 17, and art. IX, sec. 20, the exercise of the right being vested in the legislature, which may delegate it to the city.

11. Municipal Corporations—Limitation of Indebtedness—Statutes—Constitution.—Civ. Code 1912, sec. 3050, relating to the issue of municipal bonds, but providing that the city of Greenville shall not incur a bonded indebtedness in excess of 15 per cent. of its taxable property, remains in force, except as to the 15 per cent. limitation of indebtedness which was removed by constitutional amendment of 1911 (act Feb. 3, 1911 [27 St. at Large, p. 14]), which is self-executing.

12. Eminent Domain—Constitutionality of Statute—Railroads—Condemnation—Right of Way—Compensation.—A statute providing for condemnation of land by railroads for right of way, act Sept. 22, 1868 (14 St. at Large, p. 89), to which cities are subrogated in condemnation of waterworks by act March 6, 1916 (29 St. at Large, p. 940), is not unconstitutional and not in conflict with Declaration of Rights, sec. 17, or article on Corporations (art. IX, sec. 20).

13. Statutes — Constitutionality — Amendment—Validity.—Although Civ. Code 1912, sec. 3015, relating to waterworks, failed to follow the requirements of Const., art. VIII, sec. 5, that "no such construction or purchase shall be made except upon a majority vote of the electors in said cities," was not so far without constitutional authority that it could not be amended to provide for a vote on the policy of acquisition and form procedure for condemnation of waterworks plants, as is done by act March 6, 1916 (29 St. at Large, p. 940).

Before Smith, J., Greenville, Summer term, 1917.   Affirmed.

Action by the Paris Mountain Water Company against the City of Greenville and others.   From the sustaining of

defendant's demurrer and dismissal of the complaint, plaintiff appeals.

The amended complaint herein is as follows:

The plaintiff, by its amended complaint, respectfully shows to the Court: 1. The defendant, city of Greenville, is a municipal corporation created by and existing under the laws of the State of South Carolina, and the other defendants are the officers of the said city, the defendant, C. S. Webb, being mayor, and the other defendants being members of the city council of the said city; plaintiff is a corporation duly incorporated under the laws of the State of South Carolina, and is a public service corporation engaged in providing and supplying a supply of water to the city of Greenville and its inhabitants, as well as to a large number of persons, firms and corporations in the neighboring mill villages and elsewhere, including large neighborhoods and villages, such as Mills Mill, Dunean Mills, Judson Mills, and Monaghan Mills villages, and the town and inhabitants of West Greenville.

2. That the extent of the service rendered the public outside the city of Greenville by the said public service corporation is large; in fact, it is almost or quite equal to that rendered inside of said city. Furthermore, the demand for said service is rapidly increasing and according to normal growth, plaintiff alleges that its experience shows that within a short time, probably in a year or two, the limit of its capacity for service will be reached.

3. Under a franchise granted by the said city of Greenville to plaintiff, and under its charter, plaintiff has acquired real estate, and has proceeded to obtain water sheds, to erect reservoirs, lay pipes and mains, and acquire valuable tools and machinery, and a large amount of other personal property, all at an expense of hundreds of thousands of dollars, and proceeded to furnish, and has ever since been furnishing, water to the city of Greenville and to the private citizens thereof, and is now engaged in said purpose, and is the

owner of said property and plant which is located in the county (and partly in the city) aforesaid, and, as plaintiff is informed and believes, is now worth more than $1,000,000.

4. That on the 14th day of December, 1916, the defendant, city of Greenville, by reason of a resolution passed by its mayor and city council during the year 1916, caused to be served upon plaintiff the following notice: "To Paris Mountain Water Company, a Corporation Owning and Operating Waterworks Partly Within and Partly Without the City of Greenville: You will please take notice that the city of Greenville, a municipal corporation under the laws of the State of South Carolina, desires to own and operate as such municipality, a system of waterworks to be used in supplying water to the city of Greenville and to the citizens thereof, and that to this end the said city requires the water plant belonging to you, including all pipes, mains, reservoirs, land and watersheds and all other property, fixtures and appliances used in connection with and appertaining to the business of supplying water; and you will further take notice that the city of Greenville will begin condemnation proceedings for the purpose of acquiring all of said property used for said purpose, pursuant to the provisions of law in such case made and provided. Oscar Hodges, City Attorney for City of Greenville. J. J. McSwain, H. J. Haynsworth, of Counsel for the City of Greenville. December 13, 1916."

And on the 12th day of January, 1917, plaintiff served upon defendants the following notice: "State of South Carolina, Greenville County. In the Matter of the Proposed Condemnation of the System of Waterworks, Property and Plant of the Paris Mountain Water Company, a Corporation Duly Incorporated Under the Laws of the State of South Carolina. To Oscar Hodges, Esq., Messrs. Haynsworth & Haynsworth, and J. J. McSwain, Esq., Attorneys for the City of Greenville: Please take notice that the Paris Mountain Water Company, which is a corporation duly chartered under the laws of the State of South Carolina,

refuses to allow the city of Greenville to enter upon its lands in the county and State aforesaid, and hereby signifies its refusal to consent to or allow the taking or use of any of its property by the said city under the proposed condemnation proceedings herein, denying the city's right to condemn, and the said corporation hereby signifies its refusal (in case such right is sustained) to allow or consent to entry upon its property, or the taking thereof, without just compensation being first made therefor. The Paris Mountain Water Co., a Corporation as Aforesaid, by W. C. Miller, Cothran, Dean & Cothran, McCullough, Martin & Blythe, Its Attorneys, January 12, 1917."

And plaintiff alleges upon information and belief, that it is the purpose and announced intention of the defendants aforesaid to acquire all of the aforesaid property and the plant by condemnation, and alleges that the said proceeding, for reasons hereinbelow set out, is without legal authority and a violation of plaintiff's rights. The sources of this information are the city clerk, the records of the said city and the said officials.

5. Plaintiff is informed by its counsel of record in the case, and believes, that the defendants in said condemnation proceeding and for the purpose of carrying out their announced intention are relying upon what purport to be acts of the General Assembly of South Carolina appearing in the twenty-ninth volume of Statutes at Large, of said State, at pages 939-942, inclusive; but plaintiff alleges that the second of said acts, appearing at pages 941 and 942 of said volume, for the reason that there were no enacting words, and for the further reasons hereinbelow set out, is utterly null and void, and alleges that the first of said acts cannot avail said defendants for the said purpose for the reasons below set out, which reasons apply to all attempted or purported legislation sought to be invoked, as plaintiff is informed by its counsel and believes.

6. Plaintiff alleges upon information and belief, the source of its information being the city clerk, and the records of the city, that the said city of Greenville has enacted no condemnation ordinance, and has taken no steps under the law in regard thereto, upon which it can rely in this proceeding, other than a mere resolution, a copy of which was attached to our original complaint, and which is here referred to and incorporated as a part of this amended complaint, and plaintiff further alleges that under the general statutory and constitutional powers of municipalities, such ordinance is necessary before such condemnation can be had.

7. That said legislation provided for an election ordered by the city council, at which shall be determined the policy of the city in regard to municipal ownership of waterworks, said election to be decided by a majority of the qualified electors of the city. Plaintiff alleges upon information and belief, the source of its information being the city's registration books and officials, that there were throughout the year 1916 more than 1,300 qualified electors in the city of Greenville, but alleges that in an election ordered under the said act for the purpose of determining the policy of the said city in regard to municipal ownership, only 588 persons cast their ballots in favor of such policy, while 58 persons cast their ballots against such policy.

8. Plaintiff further alleges upon information and belief that the legislation aforesaid does not give the power of condemnation outside the city limits of Greenville, although it is now sought and intended to exercise such power with reference to all the property of the plaintiff company, the major portion of which lies outside the city limits of the said city of Greenville. A great part of said property, both real and personal, is used in serving outside villages and the municipality referred to, and other sections, and the inhabitants thereof, and is wholly unnecessary for service to the defendant city, and not at all needed for such purpose. But plaintiff's watersheds, reservoirs and other property are

necessary and indispensable to such outside service. Furthermore, many of plaintiff's said outside patrons are far removed from the city of Greenville and in no wise contiguous thereto. Plaintiff alleges upon information and belief, the source of its information and belief being the records and laws of the city and State, the city officials, and its attorneys, that it is the purpose of said city to take said property and plant by condemnation to serve such outside persons, firms and corporations and to supply them with water for a higher compensation, and plaintiff alleges that to construe the statutes aforesaid as permitting such taking for such purpose would bring them in conflict with the South Carolina Constitution of 1895, art. I, sec. 17, providing that private property shall not be taken for a private use without the consent of the owner, and article I, sec. 5, of said Constitution of 1895, providing that no person shall be deprived of his property "without due process of law," and article XIV, sec. 1, of the amendments to the Constitution of the United States, providing that no State shall deprive any person of his property without due process of law; and plaintiff further alleges that this will bring said statutes into conflict with article VIII, sec. 3, S. C. Constitution of 1895, limiting the power of cities to levy taxes and contract debts, "for public purposes specified by law," since such purpose and use would not be a corporate or municipal purpose; and said plaintiff alleges that such taking for said purpose would be beyond the powers of the said city under said statutes, wholly *ultra vires,* and will be a taking for a use other than the use of the said defendant, city, and to supply its citizens, that it would be inconsistent with the outside public use herein set forth, and, therefore, not permissible under the law of eminent domain, and that if said city had power to take said property and render said public service as a public use, such taking would nevertheless be a taking without changing the use, which also is not permissible under the law

of eminent domain. Plaintiff has not consented and does not consent to such taking of its property.

9. Plaintiff also alleges that the taking of its outside property necessary to the service of the defendant city, but also necessary to the service of the outside territory, persons and municipality referred to, is unlawful and not permissible under the law of eminent domain, since it would be inconsistent with and destroy such outside public use and because to take such property (as well as the other property referred to in paragraph 8), even for a public purpose, if the use were a public purpose, is not permissible under the law of eminent domain, because there would be no change in the use, and also because condemnation cannot be maintained partly for a public use and partly for a private use, and cannot be maintained for a purpose partly municipal and partly non-municipal.

10. Plaintiff further alleges upon information and belief that all of said legislation is unconstitutional and void, in that it allows the taking of the property aforesaid, without due process of law, in contravention of State and Federal constitutional provisions against such taking without due process of law, and in that it allows the taking of such property without just compensation being first made therefor, in contravention of the State Constitution, and in that article VIII, sec. 5, of the Constitution, gives to cities and towns in this State the right to acquire property by construction or purchase, and thereby impliedly excludes the acquisition of such property by condemnation. Plaintiff alleges that the statutes of 1916 relied on and the statutes therein referred to providing for the condemnation of property by railroad corporations to acquire rights of way, relied upon by the city, are unconstitutional and void as allowing a taking of plaintiff's property without due process of law, in violation of the State and Federal provisions of the Constitution above referred to in that subject, which taking would be partly for a public use and partly for a private use, and since it permits

the property to be taken upon deposit of the amount of the verdict of an extra-judicial jury, or a jury without a Judge, makes no provision for the deposit being first made, no provision for interest on the amount of the deposit with the clerk to cover a period when the party asserting the right of eminent domain can have the use of the property without compensation, and providing no guarantee that the owner of the property shall ever be compensated for the elements of damages not covered by the award of the first so-called jury, and for the same reasons said provisions are unconstitutional and void under article I, sec. 17, of the S. C. Constitution of 1895, providing that private property shall not be taken for a public use "without just compensation being first made therefor," and under article V of the amendments to the United States Constitution, relating to such compensation.

11. Because the statutes aforesaid, the condemnation act of 1916, and the statutes therein referred to, providing for condemnation of property by railroad corporations to acquire rights of way, are unconstitutional and void when construed to allow the taking of plaintiff's outside property essential for the service of noncontiguous outside persons, and corporations, since such taking would impair the obligation of the contracts which plaintiff has to furnish service for hire to such outside persons and corporations, and such legislation is thus in violation of article I, sec. 8, of the S. C. Constitution of 1895, and article I, sec. X, of the United States Constitution.

12. That the assessed value of the taxable property of the city of Greenville as last made up by the county auditor is approximately $5,500,000, and the bonded indebtedness of the said city is more than $900,000, as plaintiff is informed by the city and county records and officials, and believes, and is, therefore, already in excess of the statutory limitation of 15 per cent. provided under section 3050 of volume I of S. C. Code of 1912, and plaintiff alleges that the

city contemplates a bond issue, the proceeds of which are to be used in paying for the property and plant of the plaintiff, and alleges that the value of the said plant is such that at least $900,000 or $1,000,000 would be necessary for said purpose, and that the money can only be raised by said bond issue, and such bond issue will carry the city's indebtedness far beyond the said 15 per cent. limitation, since it will be some years before the bonded indebtedness can possibly be reduced to the said 15 per cent.

The affidavit of Howell W. Perry attached to the original complaint herein is here referred to and incorporated as a part of this complaint.

Wherefore, plaintiff prays that the Court may award it and maintain a temporary restraining order, restraining the said city of Greenville, its officers, agents and attorneys, from taking any further steps in said condemnation proceedings, together with a rule to show cause why said order should not be made permanent, and for a permanent injunction against the said city of Greenville, its officers, agents or attorneys, restraining it and them from taking any further steps in said proceeding, or in any way interfering thereunder with the rights, property and plant of this plaintiff, together with the costs of this action.

Plaintiff's exceptions, except the ninth, are as follows:

1. Because the Court erred in holding that a majority of those voting may determine "the policy of the city in favor of municipal ownership of waterworks; whereas, the Court should have held that such majority did not constitute "a majority of the qualified electors of the city," which is necessary under the statute to determine such a policy.

2. Because the Court erred in failing to declare that the act of the General Assembly No. 549 (29 Statutes at Large, pages 941, 942), is void by reason of the total absence of enacting words, and by further reason of the fact that section 3027, volume I, of the S. C. Code of 1912, which said

act purports to amend, is unconstitutional and void as special legislation, and there was nothing to amend.

3. Because the Court erred in sustaining section 3015 of volume I of S. C. Code of 1912, as amended by act of the General Assembly (29 Statutes at Large, 939, 940), against the objection made in the complaint that it is void as an attempted exercise of the power of eminent domain, in that it destroys another public use, to wit, the service of noncontiguous persons and corporations, and the service of another public corporation or municipality, the town of West Greenville, and its inhabitants, the city of Greenville not only having legal power and authority to refuse such service, but having no such authority to render same.

4. Because the Court erred in sustaining the said section 3015, vol. I, S. C. Code of 1912, as amended by the statutes of 1916, against the objection made in the complaint that it is void as being in excess of the power of eminent domain, in so far as it is construed to permit the taking of plaintiff's property for similar service by the city of Greenville to persons and corporations far removed from the city and similar service to the municipality of West Greenville and its inhabitants; this being to take "without changing the use."

5. Because the Court erred in upholding the alleged right of the city to take by condemnation plaintiff's property outside of the city, concededly not needed for the use of the city of Greenville, for the purpose of engaging in the service of outside persons and corporations and municipalities, and in not holding that such taking would be for private use in violation of S. C. Constitution 1895, art. I, sec. 17, and that the condemnation statutes relied upon are unconstitutional in so far as construed to permit such taking.

6. Because the Court erred in upholding the alleged right of the city to take plaintiff's property outside of the city concededly not needed for the city's purposes, and in not holding that such taking is unconstitutional and nonpermissible, and that the condemnation statutes relied upon are

unconstitutional and void in so far as they are construed to permit such taking, being in contravention of article VIII, sec. 3, of the Constitution, providing that "the General Assembly shall restrict the powers of cities and towns to levy taxes and assessments, to borrow money and to contract debts, and no tax or assessment shall be levied or debt contracted except in pursuance of law, for public purposes specified by law;" it being alleged in the complaint and con-ceded that the city must pay for the said waterworks, etc., by bond issue.

7. Because the Court erred in upholding the condemnation statute relied upon by the city against the objection made in the complaint that it is unconstitutional and void under S. C. Constitution of 1895, art. VIII, sec. 5; said statute purporting to allow cities and towns to acquire waterworks systems by condemnation, whereas said constitutional provision provides only two methods to acquire same; "by construction or purchase."

8. Because the Court erred in upholding the right of the city to acquire a part of plaintiff's property without acquiring much other property belonging to plaintiff and constituting part of one indivisible waterworks system, the defendant, city, by the fifth ground of demurrer conceding that much of this property is not sought to be condemned.   It is respectfully submitted that this will be in effect to destroy the public use above referred to, the service of persons and corporations far removed from the city limits and the town of West Greenville and its inhabitants, which is in excess of the power of eminent domain, and not permissible under the law.

10. Because the Court erred in not sustaining the objection made in paragraph 11 of the amended complaint that the condemnation statutes relied on by the city are unconstitutional and void when construed to allow the taking of plaintiff's outside property essential to the service on noncontiguous outside persons and corporations, since such tak-

ing would impair the obligation of contracts which plaintiff has with such persons and corporations, in violation of article I, sec. 8, of the S. C. Constitution of 1895, and article I, sec. 10, of the United States Constitution.

11. Because the Court erred in not sustaining the objection to condemnation proceedings raised in paragraph 12 of the amended complaint, that it will require a bond issue in excess of statutory limitation of 15 per cent. provided under section 3050 of volume I of South Carolina Code of 1912.

12. Because the Court erred in not holding the railroad condemnation statutes relied upon by the city to be unconstitutional and void, because in contravention of the due process of law clauses of the State and Federal Constitutions, article I, sec. 5, S. C. Constitution of 1895, and article XIV, sec. 1, of amendments to the United States Constitution.

13. Because the Court erred in not holding that the railroad condemnation statutes relied upon by the city are unconstitutional and void, in that they permit the taking of private property, not only before just compensation has been made, but before just compensation has even been determined by due process of law, that is, a jury with a Judge—in violation of article I, sec. 7, of the South Carolina Constitution of 1895, and article V of the amendments of the United States Constitution as pointed out in paragraph 10 of the amended complaint.

14. Because the Court erred in not sustaining the objection made in the amendment to the amended complaint "that plaintiff further alleges as a ground for this injunction that the act of 1916, under which defendants claim the power of condemnation, is unconstitutional and void for the following reasons: Section 3015 of the Code, which the act of 1916 purports to amend, is unconstitutional, in that it purports to confer upon municipalities the power to construct and operate waterworks without providing the limitations prescribed in article VIII, section 5, of the Constitution,

requiring an election upon the question of constructing or purchasing waterworks; section 3015 being unconstitutional and void, the amending act of 1916 is also void as being an attempt to amend an unconstitutional and void statute."

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *As to the unconstitutionality of the amendatory act of 1916:* Constitution, art. VIII, sec. 5; 105 S. C. —; 89 S. C. 669; 166 U. S. 685; Code of Laws, sec. 3015, amendatory act of 1916; 31 L. R. A. (Ind.) 730; 48 N. W. (North Dakota) 363; 57 L. R. A. (Ky.) 778; 68 Atl. (Del.) 240; 81 S. W. (Tex.) 973; 6 R. C. L. 49; 12 Wheaton 419; 4 L. R. A. 93; 98 Am. Dec. (Pa.) 272; 4 Am. St. (Mich.) 465; 48 Am. D. (Ga.) 248; 60 Am. Dec. (Ga.) 717; 9 L. R. A. (Ind.) 326; 31 L. R. A. (Ind.) 726; Cooley Const. L. 64; 1 L. R. A. (N. S.) 490; Cooley (7th Ed.) 115; 6 L. R. A. 847; 50 N. E. 599; 1 L. R. A. (N. S.) 490 (note); Cooley on Con. Lim. (6th Ed.) 210; 94 S. C. 444; 79 S. C. 9; 67 Ind. 174; 51 N. E. (Ind.) 474; 52 N. E. (Ind.) 699; 63 N. E. (Ind.) 763; 86 Pac. (Mont.) 266; 105 N. W. (Neb.) 293; 59 S. C. 110; 61 So. (L. A.) 154; 98 Ind. 516; 103 N. E. (Ind.) 1078; 25 N. E. (Ill.) 962; 1 Lewis P. 681; 57 Mich. 547; 24 N. W. 820; 57 Mich. 127; 31 Pac. (Col.) 238; 77 Pac. (Wash.) 382.    *The elction prescribed by the act of 1916 was not carried by a majority of the qualified electors of the city:* Constitution, art. VII, sec. 1; Const., art. VIII, sec. 2; sec. 5; art. XV, sec. 1; art. XVI, sec. 3; art. II, sec. 13; art. III, sec. 12; art. IV, sec. 23; 67 S. C. 324; art. VII, sections 2, 7, 8, 10; art. VIII, sec. 7; sec. 8; art. IX, sec. 2; art X, sec. 2; art. XVI, sec. 1; art. XVI, sec. 3; 100 N. E. (Ind.) 833; 50 Miss. 735; 95 U. S. 360; 67 Mo. 331; 101 U. S. 677; 2 S. E. (N. C.) 251; 2 S. E. (N. C.) 40; 54 Mo. 391; 101 U. S. 681; 22 L. R. A. (N. S.) 478; 11 Ill. 478; 51 L. R. A. (Ind.) 722; 39 S. C. 397; 55 S. C. 90; Const., art. VII, sec. 7.

*Messrs. McCullough, Martin & Blythe,* also for appellant, cite: *As to the meaning of the words "A majority of the qualified electors of the city" as used in the act of 1916 (29 Stats., page 940):* 105 S. C. 187; S. C. Const. 95; art. II, sec. 12; Dillon Mun. Corp., 5 Ed., sec. 383, p. 660, note; 22 L. R. A. (N. S.) 478; 99 Pac. (Wyoming) 874; 22 L. R. A. (N. S.) 478-483, 486; Dillon Mun. Corp. (5th Ed.), sec. 383, p. 660; 108 S. W. (S. Dak.) 1063; Const., art IV, sec. 14; 51 L. R. A. (Ind.) 722; 119 N. W. (N. Dak.) 361; Constitution, art. II, sections 2 and 3; art. VII, sec. 2, sec. 9. *As to the bond issue contemplated by the act:* Civil Code of 1912, sec. 3050; 105 S. C. 200; 138 U. S. 673; 34 L. Ed. 1069; 144 U. S. 173; 36 L. Ed. 390; 56 Fed. 197; 5 C. C. A. 468; Dill. Municipal Corporations 89; constitutional provision of 1905; constitutional amendment of 1911. *As to the unconstitutionality of the railroad condemnation statutes:* 95 S. C. 68; art. I, sec. 17, Constitution of 1895; Lewis Eminent Domain (3d Ed.), p. 1326, and note 41. *Furnishing water to persons outside of the city of Greenville is not a municipal purpose:* 33 S. C. 24; Const. of 1895, art. VIII, sec. 5; 87 S. C. 566; 8 L. R. A., p. 490, and note; Dillon on Corporations, sections 1299, 1291 and 1292; Constitution of 1895, art. VIII, sec. 3, sec. 5; Civil Code, sec. 3025; 87 S. C. —; Dillon, 5th Ed., vol. III, p. 209; 15 Cyc. 612-614.

*Mr. J. J. McSwain,* for the City of Greenville, respondent, cites: *As to the constitutionality of the amendatory act of 1916:* Constitution of 1895, art XIV, sec. 3. *As to the meaning of words, "A majority of qualified electors of the city," as used in the act of 1916:* 67 S. C. 342; Constitution of 1895, art. VIII, sections 5, 12 and 13; Civil Code, vol. I, sec. 3019; 68 S. C. 163; Civil Code, vol. I, sec. 3015; 29 Stats. 939; Civil Code of 1912, vol. I, sec. 3015; Constitution of 1895, art. VIII, sec. 5; 105 S. C. 188; article VIII, sec. 7; Constitution of 1895, art. II, sections 13 and 12; 9 R. C. L. 1115; 32 L. R. A. (N. S.) 532; 15 Cyc. 388; 22 L. R.

A. (N. S.) 478, and note. *The property and franchises of a public service corporation, although held for public purposes, are not exempt from the power of eminent domain of municipality:* 218 U. S. 180; 3 Dillon Mun. Corp., sec. 133. *A city may be authorized to acquire land beyond the municipal limits for public use and to exercise the power of eminent domain for that purpose:* 3d Dillon Mun. Corp., sec. 1028.

*Messrs. Haynsworth & Haynsworth* and *Oscar Hodges,* for respondents, submit: *The legislature is vested with the power to authorize municipalities to acquire waterworks by eminent domain:* 91 U. S. 367; 52 At. 774; 63 L. R. A. 301; Constitution of 1895, article VIII, sec. 5. *Sec. 3015, as amended by the act of March 6, 1916, is not inconsistent with sec. 5, article VIII of the Constitution of 1895:* 84 S. C. 563; 61 S. C. 205; 80 S. C. 521; 77 S. C. 356; 77 S. C. 260; 73 S. C. 150. *In order to make valid the election in favor of municipal ownership of waterworks, it is only necessary that a majority of the electors voting at the election should vote in favor of such ownership:* 95 U. S. 360; 4 S. C. 462; 12 S. C. 285; 47 S. C. 428; 67 S. C. 242; 47 Pac. 259. *The fact that the water company is serving suburban enterprises and citizens does not preclude the exercise of the rights of eminent domain on the part of the city:* 7 L. R. A. (N. S.) 201; Ann. Cas. 1913e, p. 153; 218 U. S. 180; 3 Dill. Mun. Corp., parghs. 1312, 1028; sec. 5, article VIII of the Constitution of 1895; Code, vol. I, sec. 3025; 89 S. C. 516-517; 87 S. C. 570; 218 U. S. 180; 3 Dillon Mun. Corp., sec. 1313; sec. 1028. *Result of the election could be declared by resolution or ordinance, either sufficient:* 148 U. S. 591.

April 1, 1918.

The opinion of the Court was delivered by Mr. Justice Gage.

Action by the Paris Mountain Water Company, hereinafter referred to as the company, against the city of Greenville, hereinafter referred to as the city, to enjoin the city from proceeding to condemn for the city's use the company's water plant. Demurrer to the complaint; the same sustained; appeal by the company. Let the complaint be reported. A like, but not identical, controversy has been hither once before. 105 S. C. 180, 89 S. E. 669.

There are 14 exceptions to the order of the Circuit Court, but they have been argued under half as many heads. We shall consider the exceptions therefore under seven subjects. Let the exceptions be reported, except the ninth, which was abandoned. The second exception was not argued. The third, fourth, fifth, sixth, eighth and tenth exceptions were argued together. The twelfth and thirteenth exceptions were argued together. The other exceptions were argued *seriatim.* We consider them in the same fashion.

The Circuit Court was clearly right to hold that the law is satisfied if the election was carried by a majority of the electors voting thereat. The appellant relies strongly upon a case from Wyoming, and from other States with constitutional provisions like that State. The Constitution of this State is markedly different from that of Wyoming on the subject under consideration. The Wyoming decision had reference to an election to amend the Constitution of that State. That Constitution plainly declares that such an amendment shall be allowed if a majority of the electors shall ratify it. But the Constitution of this State may be amended by a majority of the electors voting thereon. Article XVI, sec. 1. More than that, in at least eleven other instances recited in our Constitution, that instrument prescribes only a majority of the electors voting in order to express the will of the body of electors voting at the polls. They are: Article II, sec. 13; article VII, sec. 2; article VIII, sec. 2; article VIII, sec. 5; article VIII, sec. 7; article VII, sec. 8; article VII, sec. 10; article

VIII, sec. 8; article XVI, sec. 3; article X, sec. 11.   The general scheme of the Constitution, then, is that in elections by the people on the most important issues of State, the will of the people shall be sufficiently expressed by a majority of those who go to the polls and vote.

With reference to the specific subject under consideration, which is an election for the acquisition of a water plant, the Constitution is plain and to the same effect.   Article VIII, sections 5, 7.   Section 5 declares that in such cases there shall be "majority vote of the electors * * * who are qualified to vote on the bonded indebtedness of said city."   The closely following section 7 declares how a bonded debt shall be voted on, to wit, as provided in Article II, section 13, of the Constitution.   Reference had thereto shows that "a majority of those voting in said election shall be necessary to authorize the issue of said bonds."   And the above mentioned section 7 of article VIII itself declares:

"Unless a majority of such electors voting on the question shall be in favor of creating such further bonded debt, none shall be created."

We find no provision in the Constitution which prescribes that a majority of all the electors, those voting and those not voting, shall be necessary to carry an election by the people save in one instance, and that refers to an election to determine if a town shall be incorporated.   Article VIII, section 2.   The other instance cited by the appellant proves the contrary of his argument.   It is true article VII, section 1 (the instance cited), requires that one-third of the qualified electors within an area of a county shall petition for a new county.   But section 2 of the same article declares that the election may be carried by two-thirds of the qualified electors voting at such election.   Another counsel for the appellant cites other provisions of the Constitution than those we have referred to touching what is a sufficient electorate, but they mostly refer to elections and to procedures other than by a vote of the people.

But the argument is that the act of 1916 (29 Stats. 940, proviso at the end of the act), under which the city is proceeding, prescribes, by apt words which may not be ignored, that the policy of the city towards condemnation shall be fixed "by a majority of the qualified electors of the city." If the quoted words mean by a majority of the qualified electors of the city the sum of those voting and those not voting, then the legislature has changed the general rule stated by the Constitution; and it has required one electorate for acquisition of water plants by purchase, and another electorate for acquisition by condemnation. But we need not go that far; we need only hold that the words the statute has used mean what words of like import have been construed to mean by Courts of undoubted authority, and that the legislature employed the words in full view of those decisions.

We rest the case, as largely did the Circuit Court, on *Cass v. Johnston,* 95 U. S. 360, 24 L. Ed. 416. It was there held that: "All qualified voters who absent themselves from an election duly called are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares, * * *" and "unless the legislative will to that effect is clearly expressed."

The second exception was not argued; it need not, therefore, to be considered; it is overruled.

The appellant makes one bifold question out of exceptions 3, 4, 5, 6, 8 and 10, and that makes the third head. The question arises out of the circumstance that the company now serves with water closely lying communities to the city, yet out of the corporate limits of the city. The facts are set out in paragraphs 1 and 8 of the complaint. The appellant's postulate is this: "The city must operate the outside property not needed for this purpose, and serve for hire the town of West Greenville and

noncontiguous communities, or (2) it must cease to operate this public utility as to them."

We follow each horn of that dilemma. The Constitution authorizes towns to "operate waterworks systems, * * * and may furnish water * * * to individuals, firms and private corporations for reasonable compensation." These words do not expressly or by necessary implication limit the service to individuals, firms, and private corporations situate within the corporate limits.

The town is a creature of the legislature, and the legislature may (within the limits of the Constitution) define the powers of the town.

Directly after the Constitution was adopted the legislature authorized towns to furnish water to "persons, firms or corporations without the corporate limits but contiguous thereto." Section 3025, Code of Laws. The appellant argues that a part of the service in the instant case is to be to territory noncontiguous to the city. It is true that the complaint alleges that inference, but it does not state the facts which are the basis of the inference, and there is nothing in the complaint to identify the situs of the communities now served by the company and proposed to be served by the city, from which it may be ascertained whether they are contiguous to the city or not. The argument suggests "West Greenville," - which, as everybody knows, is only separated from the city of Greenville by Reedy River. The argument also suggests Monoghan Mills, the locality of which is at least not unknown.

It is a matter of common knowledge that generally the water supply and reservoirs and lead pipes of many towns are of necessity many miles without the corporate limits. It is also a matter of common knowledge that many of the towns of the State, and chief amongst them Greenville, are surrounded by manufacturing plants domiciled just out of the corporate limits, and by suburban villages operated under

separate charters, and divided off from the city by an arbitrary line.

The suggestion of appellant that the city will go into "municipal trading," condemned by Mr. Dillon, does not raise a question of law, but of policy, and that policy has been determined by the Constitution and by the legislature. See *Omaha v. Omaha,* 218 U. S. 199, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084.

The second horn of the dilemma is, that the city may choose to cease to serve the outlying communities, in which event a present public service will be destroyed. And the appellant calls that a taking of property without due process. It is true the city, when it acquires the company's plant, may choose not to serve the contiguous communities outside the corporate limits. *Childs v. Columbia,* 87 S. C. 570, 70 S. E. 296, 34 L. R. A. (N. S.) 542. But the present water convenience of the takers in West Greenville and Monoghan is not property; and if it is, the city by acquiring the plant is not by that act taking service away from those communities. The appellant, however, suggests that if such service shall be abandoned by the city, then the city will not have the constitutional power to condemn a way to restore the service. We think that apprehension cannot affect the city's right to acquire the essential plant. Paralleling what the Court said in the Omaha case, *supra:*

"If those outside disturbing pipes could not be lawfully used by the city for the purpose for which the water company had used them, it does not follow that (the acquisition) would be thereby any less (an acquisition) as an unitary system."

The fundamental right of the city to acquire the company's water plant cannot be defeated by the suggestion that certain takers outside the city now supplied by contract with the company may be hereafter cut off from the use of water.

That would be to defeat an essential right by the failure to include in it an incidental practice.

The fourth head (seventh exception) goes to the meaning of section 5 of the eighth article of the Constitution. The appellant asserts that the Constitution there limited a town to acquire a water plant by two methods alone; that is to say, by construction and by purchase, and corollary to that the appellant asserts the Constitution denied by necessary implication the right to acquire by process of condemnation. And that is the issue to be decided.

Sections 5 and 7 are in the form of a statute; they operate directly on towns, without the need of legislative mediation. Like many provisions of the modern Constitution, these sections are self-executing. 6 R. C. L., p. 57. There is nothing in them to suggest a limitation of legislative power. Other sections of the article are directions to the General Assembly; of such are sections 1, 3, 6, 10 and 11. The counsel for appellant says:

"The spirit of restriction upon the legislature to delegate its powers to a municipal corporation is breathed throughout the Constitution of 1868 and 1895 as to the power of taxation."

And counsel says the instant procedure involves taxation. The restriction of the Constitution is not upon the legislature, but the injunction is to the legislature to restrict the powers of the town to levy taxes. Section 3. And at section 5 of article X, the legislature is enjoined, when vesting towns with power to tax, to require the tax to be uniform. And at the same place the Constitution limits the legislature to increase the bond debt of towns beyond a fixed per cent. But we have been cited to no provision of the Constitution which limits the power of the legislature in the matter under consideration. The legislature confessedly has the power to condemn, unless the Constitution has denied it.

There is no apparent reason why the Constitution should have granted to towns the power to acquire water plants by construction or by purchase, and have denied to towns the power to acquire the same by condemnation. On the other hand, the reason is against such a conclusion. If a town is shut up to acquire property for a water plant by purchase, then a great public necessity may be balked at the outstart. There may be no person willing to sell. The power to acquire must be coextensive with the right to have. If the public ought of right to have water at the hands of the town, then the town must have the power from some source and somehow to secure it.

The primary right to acquire rests in eminent domain, and that power resides in the State of right and by necessity; the Constitution did not create it, but has only affirmed it (article XIV), and limited its exercise (article I, section 17; article IX, section 20). The exercise of the right resting in the legislature, that body may prescribe how it shall be exercised. 10 R. C. L., pp. 11-14, and cases cited; *Kohl v. U. S.,* 91 U. S. 371, 23 L. Ed. 449. The suggestion of the appellant is that the legislature may exercise the power, and for the benefit of the town, too, but cannot delegate its exercise to a town. And for that postulate reliance is had upon *Floyd v. Perrin,* 30 S. C. 1, 8 S. E. 14, 2 L. R. A. 242, and *State v. Whitesides,* 30 S. C. 519, 9 S. E. 661, 3 L. R. A. 777. The citations are inapt. The first case only held that a township could not levy a tax to pay the interest on bonds issued by the township to aid in railroad construction, but because the bonds were not issued for a corporate purpose. The last case held that the State might create the debt for the county, and might authorize the tax to pay interest on the bonds. Those cases involved the power of a township to create a valid debt for railroad construction, and of the State to do the same thing. They did not hinge on the right of the State to delegate the taxing power to a municipality, but upon the right of the municipality to exercise the power.

The power of eminent domain is more frequently committed by the State to its accredited agencies than it is exercised directly by the State.   10 R. C. L., p. 195.   And water plants are common subjects to which the power of eminent domain may be directed to acquire.   10 R. C. L., p. 48. The seventh exception is overruled.

The fifth head (eleventh exception) goes to the Court's failure to sustain so much of the admitted allegations of the complaint as charges that the instant bond issue will exceed 15 per cent. of the city's assessed taxable property.   The issue of law was considered by the Chief Justice on a former hearing of the allied cause.   105 S. C. 199, 89 S. E. 669.

The suggestion of the appellant is, that a city may not issue bonds at all, notwithstanding the constitutional warrant to do so, unless there shall be machinery devised by the legislature to that end.   That is generally true, unless the Constitution shall itself provide the machinery, as it nearly, if not quite, does in cases like the instant one.   But the further suggestion is, that the legislature has not by proper enactment proceeded to execute the constitutional amendment of 1911; but, on the contrary, the only legislation on the subject (section 3050) limits the bond issue for Greenville to an amount not exceeding 15 per cent. of the value of the taxable property therein.   All the constitutional amendment of 1911 (27 Stats. 14) purported to do was to remove the limitations theretofore imposed on Greenville by a prior constitutional amendment of 1905 (24 Stats. 955), and to leave Greenville without any limitation in certain cases, of which the instant case is admittedly one.   The statutes on the subject (section 3050) which grew out of the Constitution of 1895 is appropriate to the Constitution as amended. The constitutional amendment of 1911 is manifestly self-executing.   Cooley, *83.   The statute remains of force, save the limitation of 15 per cent. is read out of it, and none other is fixed or could be fixed.   The exception is overruled.

The sixth head (twelfth and thirteenth exceptions) challenges the validity of those statutes "now provided for by law for railroad corporations to acquire rights of way." The act of 1916 (29 Stats. 940) subrogates the city to these statutes in the acquisition of the instant water plant. Counsel for appellant by oral argument "stressed this issue," and his brief avers:

"That the railroad condemnation statutes are unconstitutional, not because they deny due process of law, but because they permit the taking of the property, not only 'without just compensation being first made therefor,' but before just compensation has even been judicially determined."

And to sustain this postulate counsel relies on *Railway v. Ellen,* 95 S. C. 68, 78 S. E. 963, Ann. Cas. 1915b, 1042. The statute prescribing the manner by which lands of persons may be taken for the construction of railways was enacted in 1868. 14 Stats. 89. And the question now made is raised after a half century's administration of that statute. That reflection is sufficient to throw more than a doubt upon the soundness of the appellant's contention. There are two provisions in the Constitution on the subject, one in the Declaration of Rights (section 17) and the other in the article on Corporations (section 20). The act under consideration (29 Stats. 940) refers to the latter. For authority appellants rely on Lewis on Eminent Domain, and cases from Dakota, California, and Pennsylvania, construing the Constitution of those States. Those authorities make a literal construction of the Constitution as against a reasonable construction which we make. We rest the cases on *Railroad v. Ellen, supra.* The Court *en banc* there sustained the statute in its cardinal features, and that included of necessity the right of the condemnor to make compensation in the time and method prescribed by the statute, though so much was not said.

The seventh and last head (exception 14) goes against the constitutionality of section 3015, and by consequence

against the amendment of it.    The alleged infirmity in section 3015 is that it does not follow to the full that part of the Constitution (article VIII, section 5) which directs that "no such construction or purchase shall be made except upon a majority vote of the electors in said cities," etc.    The amendment to the statute sought to add to it two materially new features: (1) A vote by the electors on the policy of acquisition; and (2) the acquisition of a water plant by procedure of condemnation. ` It is true that a statute which is without constitutional authority cannot be amended.    But it is too broad a statement to say that a statute which fails in some even essential features to come up to all the requirements of the Constitution may not be amended.    So far as the instant act (1916) dealt with a procedure by construction and purchase, it entered a field which the Constitution authorized it to enter and enacted generally in the very words of the Constitution; it only fell short of the total procedure prescribed by the Constitution, to wit, to provide a preliminary vote on policy.    A deduction that a subsequent act by amendment might not supply that omission would be manifestly contrary to good sense, and we think contrary to law.    See 6 R. C. L., p. 120; Note 4, Ann. Cas., p. 920, and cases there cited. The second particular in which the statute was amended was foreign to the Constitution; it added to the constitutional methods of procedure by construction and purchase, the third method of procedure by condemnation.    And for the reason above stated the amendment was allowable.

The fourteenth exception is overruled, and the judgment below is affirmed.

Mr. Chief Justice Gary and Messrs. Justices Hydrick and Watts concur.

Mr. Justice Fraser.    I dissent.    In a case between these same parties, reported in 105 S. C. 187, 89 S. E. 669, it was

decided that in grants of the power of eminent domain, the grant must be strictly construed. There are two distinct classes of majorities: (1) A majority of those who vote. (2) A majority of those entitled to vote. It seems to me that a substitution of class No. 1 for class No. 2 would require not merely a very liberal construction, but an amendment, and this Court has no power to amend. It seems to me, further, that a grant of the power to construct or purchase is intended to restrict the power of construction and purchase. To construct is to create a new use. To purchase is to transfer the exercise of a power by mutual consent of all the parties. To condemn an already existing plant creates no new use, but simply transfers the property, franchises and profits from a quasi public corporation to a public corporation. If this can be done without a change of the use, then I see no reason why one quasi public corporation could not be given the right to condemn the property of another. Could the Southern Railway be empowered to condemn the property, rights and franchise of the Atlantic Coast Line Railroad Company? It is not suggested that the plaintiff has failed in its duty to serve the public, or that the city of Greenville can supply a more efficient service. R. C. L., vol. X, sec. 157:

"Property devoted to the public use may be taken by authority of the legislature for a different public use, even if the earlier enterprise is thereby wholly destroyed; but property of a private corporation devoted to one public use cannot be taken for the same use, because no public use or public necessity can be served by such a taking."

Mr. Lewis, in his work on Eminent Domain, says:

Section 276: "General principles deduced from the foregoing decisions in respect to taking of property already devoted to public use.

"First. All property held for public use is still subject to the eminent domain power of the State, with this exception,

that it cannot be taken to be used *for the same purpose in the same* manner." (Italics his.)

For these reasons I dissent.